KORULA T. CHERIAN (SBN 133697)
sunnyc@ruyakcherian.com
SONG ZHU (SBN 257608)
songz@ruyakcherian.com
ROBERT M. HARKINS, JR. (SBN 179525)
bobh@ruyakcherian.com
RUYAKCHERIAN, LLP
1936 University Ave, Suite 350
Berkeley, CA  94704
Telephone: (510) 944-0190

Attorneys for Plaintiff
UCAR TECHNOLOGY (USA) INC., and UCAR, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UCAR TECHNOLOGY (USA) INC., a California corporation, and UCAR INC., a Chinese corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>YAN LI, an individual; HUA ZHONG, an individual; DA HUO, an individual; and ZHENZHEN KOU, an individual,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**(1) Violation of the Defend Trade Secrets Act**<br>**(2) Misappropriation of Trade Secrets**<br>**(3) Violation of the Computer Fraud and Abuse Act**<br>**(4) Breach of Contract**<br>**(5) Breach of the Covenant of Good Faith and Fair Dealing**<br>**(6) Unfair and Unlawful Business Practices**<br>**(7) Property Theft / Conversion**<br>**(8) Fraud / Deceit**<br>**(9) Breach of Fiduciary Duty**<br><br>**Jury Trial Demanded** |

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1      Plaintiff UCAR Technology (USA) Inc., a California corporation, and

2  UCAR Inc., a Chinese corporation (collectively "UCAR") hereby complain against

3  Defendants Yan Li ("Li"), Hua Zhong ("Zhong"), Da Huo ("Huo"), and Zhenzhen

4  Kou ("Kou") (collectively "Defendants"), and alleges, based upon personal

5  knowledge as to themselves and their own acts and on information and belief as to

6  all other matters, as follows:

7                            **INTRODUCTION**

8      1.      UCAR is one of the largest chauffeured car service providers in

9  China.  Like Uber and Lyft in the United States, in China UCAR provides a

10  platform for ride-hailing to millions of people who use UCAR apps on iPhones

11  and Android-enabled smart phones or use the UCAR website.  UCAR is a

12  technology company whose competitive advantage is based on its ability to

13  continue to innovate.  Some of its most mission critical projects include its ride-

14  hailing software and analysis of large data sets related to vehicles in transit.  To

15  advance its technology, especially related to big data analysis, UCAR set up a

16  U.S. subsidiary and hired Defendants as a team of research and development

17  engineers.  Over time, the subsidiary began to work on important technological

18  advances related to auto development of next-generation autopilot technologies.

19  Defendants spent approximately one-and-a-half years and collectively received

20  hundreds of thousands of dollars from UCAR to work on the company's trade

21  secret technology development. UCAR gave access to its proprietary data. During

22  that time, the team of Defendants transitioned into a new technological field of

23  data analysis and software related to driverless vehicles.  What UCAR did not

24  know, on information and belief, was that Defendants were secretly setting the

25  stage to steal UCAR's proprietary information, and all the work they had done for

26  UCAR, to set up a competing venture of their own.  In March 2017, UCAR first

27  learned that Defendants were considering leaving the company, and then, on

28  March 14, 2017, Defendants all abruptly resigned by email, on information and

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

belief, taking UCAR's trade secrets and intellectual property, copying this information to other computers or copying data to local memory on non-UCAR computers through access to remote servers, and reformatting all of the UCAR company computers.  When confronted, Defendants effectively admitted that their actions were the product of simple greed: they had learned that if they took UCAR's property, they could obtain tens of millions of dollars of investment, so they did.

2.      Accordingly, UCAR seeks immediate injunctive relief to protect its trade secrets and confidential information from Defendants' misappropriation, to obtain all copies of the work that was taken, and to stop Defendants from improperly using the stolen information or other company trade secrets, as well as damages attributable to Defendants' illegal acts.

## THE PARTIES

3.      UCAR Technology (USA) Inc. is a California corporation with a place of business located at 2755 Great America Way, Ste. 225 Santa Clara, California 95054.

4.      UCAR Inc. is a Chinese corporation with a place of business located at 118 Zhongguancun East Rd., Haidian District, Beijing 100098.

5.      Upon information and belief, Defendant Yan Li is an individual residing at 519 Humber Court, Sunnyvale, California 94087.

6.      Upon information and belief, Defendant Hua Zhong is an individual residing at 1016 Continentals Way, Apt. 103, Belmont, California 94002.

7.      Upon information and belief, Defendant Da Huo, also known as Eric Huo, is an individual residing at 1 Vista Montana, Unit 2416, San Jose, California 95134.

8.      Upon information and belief, Defendant Zhenzhen Kou is an individual residing at 6606 Devonshire Dr., San Jose, California 95129.

## JURISDICTION AND VENUE

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

9.      This Court has federal question subject matter jurisdiction over Plaintiff's claims under at least 28 U.S.C. §§ 1331, 18 U.S.C. §§1836 *et seq.*, & 18 U.S.C. §§ 1030 *et seq.*

10.     This Court has supplemental jurisdiction, pursuant to 18 U.S.C. § 1367, over Plaintiff's claims arising under California law.

11.     This Court has personal jurisdiction over Defendants because each of them resides in this state and in this district, and each has committed and/or contributed, in this state and in this district, to the unlawful acts as alleged in this complaint.

12.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the acts complained of herein occurred in this District, Defendants reside in this district, Defendants transact business in this District, and/or the property that is the subject of this action is situated in this District.

13.     Venue is proper in this District under 28 U.S.C. §§ 1391(c)-(d) because (i) Plaintiff UCAR Technology (USA) Inc. maintains its principal place of business in this District, and (ii) this is a District in which Defendant is subject to the Court's personal jurisdiction with respect to this action, and/or the District in this State where Defendant has the most significant contacts.

## **BACKGROUND FACTS**

14.     As a technology company and one of the largest car-hailing services and technology platforms in China. UCAR has invested many millions of dollars in its technology.  Known as Uber's rival in China, UCAR set up a business-to-consumer operation to better compete, and the company has succeeded by maintaining cutting-edge technology through its advanced mobility sharing platform built on the internet and big data. To maintain its position as a leader in a competitive industry, UCAR highly values the work ethic of its employees and in maintaining strict confidentiality of the company's proprietary plans, methods, practices, intellectual property, and other confidential information.  UCAR's

ability to advance its technology platform is essential to the company's success.

15.    UCAR hired Defendant Li by written agreement executed on or about July 24, 2015, with an anticipated start date for employment of September 14, 2015.  Li was hired to work in UCAR's Silicon Valley office as an Executive Architect responsible for research and development, software coding and program/project management relating to big data analysis and later autopilot technologies for UCAR.  Li was the team leader.

16.    UCAR hired Defendant Kou by written agreement executed on or about July 21, 2015, with an anticipated start date for employment of September 14, 2015. Kou was also hired to work in UCAR's Silicon Valley office as an Executive Architect responsible for research and development, software coding and program/project management relating to big data analysis and later autopilot technologies for UCAR.

17.    UCAR hired Defendant Zhong by written agreement executed on or about November 20, 2015, with an anticipated start date for employment of November 23, 2015. Zhong was also hired to work in UCAR's Silicon Valley office as an Executive Architect responsible for research and development, software coding and program/project management relating to big data analysis and later autopilot technologies for UCAR.

18.    UCAR hired Defendant Hou by written agreement executed on or about April 26, 2016, with an anticipated start date for employment of April 25, 2016. Hou was also hired to work in UCAR's Silicon Valley office as a Software Engineer responsible for research and development, software coding and program/project management relating to big data analysis and later autopilot technologies for UCAR.

19.    Pursuant to the employment agreements signed by each Defendant, each Defendant agreed, among other things, that the employee "will not engage in any other employment, consulting or business activity without the written consent

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

of the Company.  In addition, while you render services to the Company, you will not assist any person or entity in competing with the Company" and that the employee would "adhere to the Company's standards of professionalism, loyalty, integrity, honesty, reliability and respect for all."

20.     As part of each Defendant's employment, each Defendant had access to UCAR's proprietary, confidential and trade secret information and historical data (among other things, source code, testing data, software architecture, research and development plans and conceptions, and other intellectual property rights), and each Defendant had an obligation to maintain any such information in strict confidence and not to use it for any purpose other than for work at UCAR. Specifically, each Defendant agreed not to use the information to compete with UCAR or to help others compete with UCAR.

21.     As employees of UCAR, any and all work product technologies, software code or architecture, intellectual property, schematics, or other output that were created or derived from Defendants' employment belonged and continues to belong exclusively to UCAR.  For example, according to California Labor Code § 2860, "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."

22.     The team of Defendants were given a high degree of autonomy by UCAR to perform their research and development work and create valuable intellectual property for the company.  Each of the Defendants was entrusted as a fiduciary of UCAR, by virtue of the amount of autonomy and resources they were provided, including entrusting them to handle their own work product and encrypted data.  As the sole Director of UCAR Technology (USA) Inc., Defendant Li in particular had a special level of fiduciary trust and responsibility to the company.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

23.     UCAR provided office space for Defendants and transferred company trade secret data from UCAR servers to servers run by Amazon Web Services for the exclusive use of UCAR and its authorized employees ("AWS Account"). During their employment, and while abiding by the terms of their employment, Defendant Li had administrative level access to the data on the AWS Account. Additionally, UCAR provided each of the Defendants with laptop computers to do their work.  Defendants were not allowed to copy their work product or UCAR data to any other location other than the authorized AWS Account or the UCAR laptop computers.

24.     From the beginning of their employment, until their resignation from UCAR, UCAR continued to provide access to the company's data and office space and pay the Defendants their agreed upon salaries.

25.     UCAR maintained trade secrets regarding the data and the R&D work being performed.  Specifically, UCAR maintained at least the following as trade secrets of the company to which Defendants each had access:

a.     Detailed proprietary data that UCAR collected from its network of more than 15,000 cars, which provided valuable insight into vehicle operation and usage;

b.     Testing data for UCAR applications;

c.     The software and testing data related to autopiloted cars developed by UCAR and the subsets of the larger data set usable for work on autopilot technology;

d.     UCAR software developed to work with vehicle autopilot technology;

e.     UCAR strategic business plans; and

f.     The R&D work being done by Defendants for UCAR.

26.     UCAR took reasonable steps to ensure that the information listed in the immediately preceding paragraph was maintained as confidential trade secrets

that could not be accessed by the public. For example, UCAR kept its data and software only on protected company servers that could not be logged into by people without clearance, on company laptops that were password protected, and on servers related to the AWS Server Account with access restricted to UCAR authorized personnel, including by password protection and data encryption.

27. On information and belief, Defendants began to work on their confidential research and development projects and had success in developing software, particularly on the autopilot project. Defendants reported back to UCAR that they were making significant progress on the work regarding the autopilot technology. Defendants provided UCAR with top-level reporting, but the work product produced by Defendants was maintained only on the individual laptop computers and in encrypted files on the AWS Account.

28. On information and belief, in violation of the terms of their agreements, each of the Defendants conspired to leave UCAR and steal the work product they had developed and confidential information that had been provided by UCAR.

29. On further information and belief, Defendants disclosed trade secret information to third parties to, among other things, entice the third parties to work with Defendants and/or to invest in or set up a new company to compete with UCAR.

30. Defendants gave UCAR notice of immediate resignation on or about March 14, 2017. On information and belief, before or after that time they performed several unauthorized acts damaging UCAR, including (1) copying UCAR confidential and propriety data from the AWS Account to other non-UCAR computers or local memory on such computers by continuing to access the AWS Account, (2) copying UCAR confidential and propriety information from UCAR laptops in Defendants' possession to other non-UCAR computer storage media owned or controlled by Defendants, and (3) reformatting each Defendant's laptop

so when the computers were returned they had no data on them, thereby eliminating the entire value to UCAR of the information contained on the laptops.

31.    When UCAR learned of Defendants' impending departure, UCAR's Chief Operating Officer, Zhiya Qian, flew to the United States and met with Defendant Li.  UCAR asked Li's team to stay on and not take UCAR's confidential information.  At that meeting, Li effectively conceded that Defendants had taken UCAR's confidential and proprietary information but that Defendants' had found at least $10 million worth of investment for them to start a competing venture based on their UCAR work, and that the competing business they were starting would be worth $70 million, so they proceeded with their plan irrespective of UCAR's rights.

32.    Thus, on information and belief, Defendants actions constituted a literal heist of the paid work Defendants did over the course of 18 months and of the UCAR information Defendants had access to.  On information and belief, Defendants defrauded UCAR out of hundreds of thousands of dollars in monetary payments and stole millions of dollars of company proprietary data and information that the company had devoted a year and a half of time and resources to develop.

33.    As a result of these actions, UCAR has been damaged and continues to be damaged while Defendants retain UCAR confidential and proprietary information, and fail to return it, to UCAR.

## COUNT I – VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (18 U.S.C. § 1836, *et seq.*)
### (Against All Defendants)

34.    Plaintiff re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

35.    At all relevant times, UCAR was in possession of confidential and trade secret information, including as defined by 18 U.S.C. § 1836 *et seq.* The

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

proprietary business information of UCAR constitutes trade secrets because UCAR derives independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy, including as described above and by maintaining that information in restricted access accounts and computers. UCAR's confidential and proprietary trade secret information described herein is not, and was not, generally known to UCAR's competitors in the industry.  The trade secret information is related to a product or service used in, or intended for use in, interstate or foreign commerce.

36.     UCAR is informed and believes that Defendants have actually misappropriated, and threaten to continue to misappropriate, UCAR's trade secrets without UCAR's consent, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. On information and belief, Defendants have retained authorized copies of UCAR's proprietary and confidential computer data and R&D work product.  On information and belief, Defendants have no other background or platform that would warrant the type of investment they assert they have lined up, other than based on UCAR's proprietary and confidential computer data and trade secrets.  Defendants cannot separate out UCAR's trade secrets and confidential information in starting a competing company in the exact technology space that they worked in for UCAR. As a result, injunctive relief pursuant to 18 U.S.C. § 1836(b) is appropriate.

37.     On information and belief, all Defendants plan to work, or are already working, at this new start-up venture based on UCAR trade secret and proprietary material and R&D work product.

38.     As a product of their employment with UCAR, Defendants had access to UCAR's valuable trade secrets and confidential information as described herein. They continue to have knowledge of that information, notwithstanding the

fact that, on information and belief, they are working for a competitor, namely, a start-up business they are forming for the express purpose of stealing and using UCAR proprietary and trade secret information.

39. On information and belief, Defendants have disclosed, and intend to continue to disclose, UCAR trade secrets and confidential information to others, including their new company, in violation of the Defend Trade Secrets Act.

40. As a proximate result of Defendants' misappropriation and threatened misappropriation of UCAR's trade secrets and confidential information, UCAR has suffered, and will continue to suffer, damages in an amount to be proven at the time of trial, but which are substantial and in excess of the minimum jurisdictional amount of this Court.

41. Defendants have been, and continue to be, unjustly enriched and UCAR is entitled to all recoverable damages in an amount to be proven at the time of trial, but which are in excess of the minimum jurisdictional amount of this Court for this statutory claim.

42. As a further proximate result of Defendants' wrongful conduct and threatened misappropriation, UCAR has been injured, irreparably and otherwise, and is threatened with additional and on-going injuries. Because UCAR's remedy at law is inadequate, UCAR seeks temporary, preliminary and permanent injunctive relief. UCAR is threatened with permanently losing technology, its competitive advantage, and its trade secrets in amounts which may not be possible to determine, unless Defendants are enjoined and restrained by order of this Court, as alleged above.

43. Defendants will be unjustly enriched by the threatened misappropriation of UCAR's trade secrets and confidential information, and, unless restrained, will continue to threaten to use, actually use, divulge, threaten to disclose, acquire and/or otherwise misappropriate UCAR's trade secrets and confidential information, including but not limited to, UCAR files and data, as

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

well as the work product created by Defendants while employed by UCAR.

44.     UCAR is therefore entitled to damages for actual loss caused by the misappropriation of the trade secret; and damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss, pursuant to 18 U.S.C. § 1836(b)(3)(B).

45.     Upon information and belief, Defendants' misappropriation and threatened misappropriation has been willful and malicious in light of the terms of Defendants' employment and Defendants' acknowledgment of their unlawful acts, but continued deliberate violation of their obligations nonetheless. Thus, the UCAR trade secrets have been willfully and maliciously misappropriated, and UCAR is entitled to an award of exemplary damages of two times the damages it would otherwise be entitled to, pursuant to 18 U.S.C. § 1836(b)(3)(C).

## COUNT II – TRADE SECRET MISAPPROPRIATION
### (CALIFORNIA CIVIL CODE § 3426, *et seq.*)
### (Against All Defendants)

46.     Plaintiff re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

47.     At all relevant times, UCAR was in possession of confidential and trade secret information including as defined by California Civil Code Section 3426.1(d). The facts supporting this are the same as those underlying the violation of the Defend Trade Secrets Act claims, which are incorporated in this count.

48.     On information and belief, Defendants have actually misappropriated, and, threaten to continue to misappropriate, UCAR's trade secrets without UCAR's consent in violation of California's Uniform Trade Secrets Act (CUTSA), California Civil Code § 3426 *et seq.* On information and belief, Defendants have retained authorized copies of UCAR's proprietary and confidential computer data.  On information and belief, Defendants have no other

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

background or platform that would warrant the type of investment they assert they have lined up other than based on UCAR's proprietary and confidential computer data and trade secrets. Defendants cannot separate out UCAR's trade secrets and confidential information in starting a competing company in the exact technology space that they worked in for UCAR. As such injunctive relief, pursuant to Civil Code section 3426.2(a) is appropriate.

49.     On information and belief, Defendants have disclosed and intend to continue to disclose UCAR trade secrets and confidential information to others, including their new company, in violation of the CUTSA.

50.     As a proximate result of Defendants' misappropriation and threatened misappropriation of UCAR's trade secrets and confidential information, including the R&D work product, UCAR has suffered, and will continue to suffer, damages in an amount to be proven at the time of trial, but which are substantial and in excess of the minimum jurisdictional amount of this Court.

51.     Defendants have been, and continue to be, unjustly enriched and UCAR is entitled to all recoverable damages in an amount to be proven at the time of trial, but which are in excess of the minimum jurisdictional amount of this Court.

52.     As a further proximate result of Defendants' wrongful conduct and threatened misappropriation, UCAR has been injured, irreparably and otherwise, and is threatened with additional and on-going injuries. Because UCAR's remedy at law is inadequate, UCAR seeks temporary, preliminary and permanent injunctive relief. UCAR is threatened with permanently losing technology, its competitive advantage, and its trade secrets in amounts which may not be possible to determine, unless Defendants are enjoined and restrained by order of this Court, as alleged above.

53.     Defendants will be unjustly enriched by the threatened misappropriation of UCAR's trade secrets and confidential information, and,

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

unless restrained, will continue to threaten to use, actually use, divulge, threaten to disclose, acquire and/or otherwise misappropriate UCAR's trade secrets and confidential information.

54.     On information and belief, Defendants' misappropriation and threatened misappropriation has been willful and malicious in light of the terms of Defendants' employment and Defendants' acknowledgment of their unlawful acts but continued, deliberate violation of their obligations nonetheless. Therefore, Plaintiff is entitled to an award of punitive or treble damages and attorneys' fees pursuant to California Civil Code Sections 3426.3(c) and 3426.4.

## COUNT III – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)
### (Against All Defendants)

55.     Plaintiff re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

56.      As employees of UCAR, Defendants had access to UCAR protected computers, including in the AWS Account.  That access was dependent upon Defendants meeting their employment obligations, including the obligation not to use that information to the competitive detriment of UCAR.  Additionally, once Defendants provided notice of termination to UCAR, on or about March 14, 2017, they were no longer employed by UCAR and were no longer authorized in any way to access UCAR protected computers, such as the AWS Account and the UCAR laptop computers.

57.     On information and belief, Defendants and each of them committed unauthorized access of the protected UCAR computers, both before and after the termination of their employment, and may still be accessing that information against UCAR's express forbiddance, including by accessing protected

information on the AWS Account.  On further information and belief, this access has been performed by each Defendant with the intent to obtain and in fact steal UCAR information, to further a fraud by representing that they were entitled to use and retain the possession and benefit of such information, and to damage UCAR as a result.

58.    Additionally, on information and belief, Defendants and each of them committed unauthorized access of the protected UCAR computers, after the termination of their employment, for the express intent to damage the data on the computer, as evinced by the fact that they completely wiped all data from the UCAR laptop computers before returning them.

59.    The above unlawful acts constitute violations of the Computer Fraud and Abuse Act, codified as 18 U.S.C. § 1030.

60.    As a result of the above unlawful acts, UCAR suffered damages in excess of the statutory minimum of the Computer Fraud and Abuse Act and occurred within the past month.

## COUNT IV – BREACH OF CONTRACT

61.    Plaintiff re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

62.    Defendants' employment agreements are valid and enforceable contracts. The covenants and other provisions contained in the agreements are reasonably necessary to protect legitimate protectable interests in trade secrets, confidential information, customer relationships, work product and goodwill.

63.    UCAR has fully performed all of its obligations under the agreements, including paying Defendants collectively hundreds of thousands of dollars in compensation.

64.    Defendants have breached and threaten to continue to breach the agreements in at least the following ways:

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

CASE NO.

a.    Stealing UCAR proprietary and confidential information for their own competitive use against UCAR;

b.    Failing to return company property, including the data that had been on the UCAR laptops;

c.    Failing to turn over to UCAR administrative level access to the AWS Account;

d.    Engaging in other employment and business activities without the written consent of UCAR, namely soliciting investment and setting up a competing start-up company; and

e.    Competing with UCAR while employed at UCAR, and assisting in the set-up of a competing company while employed at UCAR.

65.    As a result of any one of these breaches of its agreements, UCAR has been injured and faces irreparable injury. UCAR is threatened with losing technology, its competitive advantage, and its trade secrets in amounts which may be not be possible to determine, unless Defendants and each of them is enjoined and restrained by order of this Court.

## COUNT V - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

66.    Plaintiff re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

67.    Defendants, and each of them, entered into agreements not to compete with or assist in competition with UCAR as part of their employment, including not to keep or share UCAR confidential or proprietary information.  As in every contract or agreement, under California law, these agreements included an implied covenant of good faith and fair dealing.

68.    UCAR has fully performed all of its obligations under the agreements, including paying Defendants collectively hundreds of thousands of dollars in

CASE NO.

compensation.

69.     Each Defendant unfairly interfered with UCAR's right to receive the benefit of the contract, namely the expectation that UCAR would have ongoing access to Defendants' work product as well as UCAR's own proprietary and confidential data and information, including access to that data on the UCAR laptops, by, on information and belief, copying the data to other media exclusively controlled by Defendants and destroying and/or denying access to that information by UCAR.

70.     UCAR has suffered, and continues to suffer, monetary, competitive and irreparable harm as a result of each Defendants' conduct in breach of the implied covenant of good faith and fair dealing.

## COUNT VI – UNFAIR AND UNLAWFUL BUSINESS PRACTICES (CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 *et seq.*) (Against All Defendants)

71.     Plaintiff re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

72.     The conduct alleged herein by each and every Defendant constitutes unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200 et seq.  Instead of performing their duties as employees and providing work product to UCAR in exchange for paid salaries, on information and belief, each Defendant stole that work product along with other UCAR confidential and proprietary information and used it to set up a start-up company to compete with UCAR.  On further information and belief, this stolen information was the sole source of a valuation Defendant Li indicated was worth $70 million, and Defendants had no other assets other than what they stole from UCAR to obtain that valuation for their new business enterprise.

73.     On information and belief, Defendants knew that by stealing UCAR's confidential information without its express permission for the benefit of a new

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

CASE NO.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

competing business enterprise they themselves set up, they were engaging in unfair business practices in violation of California law, including in violation of California Civil Code §§3426 et seq. On information and believe, Defendants have used, and continue to use, UCAR's trade secrets unfairly and unlawfully, in violation of their responsibilities and obligations to UCAR, as well as basic principles of professional decency.

74. As a direct result of these concerted actions, UCAR has suffered monetary, competitive and irreparable harm.

## COUNT VII – PROPERTY THEFT / CONVERSION
### (Against All Defendants)

75. Plaintiff re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

76. UCAR is the rightful owner of property, including computer data, trade secret and proprietary information, and work product created by Defendants while they were employed by UCAR ("UCAR Property").

77. On information and belief, Defendants, and each of them, interfered with UCAR's property by at least the following:

a. Taking possession of the UCAR Property;

b. Preventing UCAR from having access to the UCAR Property;

c. Destroying the UCAR property that was on UCAR laptops by reformatting said laptops; and

d. Refusing to return the UCAR Property when demanded by UCAR.

78. The wrongful conduct of each Defendant was a direct cause of harm to UCAR.

79. In addition, Defendants, and each of them, defrauded UCAR by having UCAR fund their efforts and give them access to data on the premise that they would provide UCAR with work product, when in fact, on information and

belief, Defendants planned to, and did, abscond with the money, UCAR confidential, trade secret and proprietary information, and the work product to instead start up a competing venture.

80.     Had UCAR been informed of the truth, it would not have paid Defendants the money or allowed continued access to UCAR confidential trade secrets or data.

81.     Therefore, each Defendant's conduct also constitutes theft under the penal code, including California Penal Code § 496.

82.     As a result of Defendants' willful and malicious theft of UCAR Property, UCAR is entitled to treble damages.

## COUNT VIII – FRAUD / DECEIT
### (CALIFORNIA CIVIL CODE §§ 1572 & 1709 *et seq.*)
### (Against All Defendants)

83.     Plaintiff re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

84.     Defendants, and each of them, represented to UCAR that important facts were true, namely that they were working on valuable work product for UCAR's benefit and that UCAR would have access to the work product. Defendants' representations were false.

85.     On information and belief, Defendants, and each of them, for some period of time, knew that the representations were false when they made the representations, or the Defendants made the representation recklessly and without regard for its truth or intentionally misled UCAR into believing the statements remained true when Defendants' knew them to be false.

86.     Defendants intended UCAR to rely on the misrepresentation and omissions, and UCAR did justifiably and reasonably rely on Defendants' misrepresentations and omissions.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

CASE NO.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

87.     As a result of Defendants' fraud, UCAR was harmed, including that it lost the value of the money it paid to Defendants and lost access to valuable data and work product.  UCAR's reliance on Defendants' representations was a substantial factor in causing UCAR harm.

88.     Additionally, based on UCAR's justifiable and reasonable reliance on Defendants' misrepresentations, UCAR continued to pay Defendants and give them access to UCAR confidential and trade secret information and access to UCAR offices and use of UCAR personal property, none of which UCAR would have done but for Defendants' fraudulent misrepresentations.

89.     Additionally, on information and belief, UCAR is being damaged by intentional misrepresentations of Defendants in representing to others that Defendants, rather than UCAR, own the UCAR data and work product.

90.     As a result, UCAR is entitled to damages pursuant to at least California Civil Code §§ 1572 and 1709 et seq.

## COUNT IX – BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

91.     Plaintiff re-alleges and incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

92.     Defendants, and each of them, were given a high degree of autonomy and trust by UCAR in carrying out their work for the company.  As a separate R&D group with their own office space, their own set of computers, and their own administrative-level access to UCAR proprietary and confidential information including to the AWS Account, each Defendant had a fiduciary relationship with UCAR whereby each Defendant was duty bound to act with the utmost good faith for the benefit of UCAR.  Each Defendant voluntarily accepted this fiduciary relationship with UCAR and signed agreements indicating that they had a duty of loyalty to the company as part of their employment.  Defendant Li, as the sole

Director of UCAR Technology (USA) Inc., had a particular level of confidence and responsibility as well as a higher level of duty to UCAR.

93.    Defendants, and each of them, breached their fiduciary duties to UCAR by the acts described in this complaint.

94.    UCAR was damaged and such damage was proximately caused by the breach of fiduciary duty by each Defendant.

## JURY TRIAL DEMAND

95.    UCAR hereby demands a trial by jury for all claims to which it is so entitled.

## PRAYER FOR RELIEF

WHEREFORE, UCAR prays for judgment against Defendants, and each of them, as follows:

1.    Compensatory damages, plus interest and prejudgment interest in an amount to be determined at trial;

2.    Other economic and consequential damages in an amount to be determined at trial;

3.    Punitive and exemplary damages in an amount appropriate to punish or set an example of Yan Li, Hua Zhong, Da Huo, and Zhenzhen Kou;

4.    Temporary, preliminary and permanent injunctive relief to prevent the individual Defendants from destroying UCAR data or information, preventing UCAR from accessing its own proprietary information including work product created by Defendants for UCAR while in UCAR's employment, and preventing Defendants from improperly using or disclosing UCAR trade secret or proprietary or confidential information in any way, including in the research, development, design or execution of any software or products;

5.    Restitution of all profits made by Defendants, in the past and future, as a result of having engaged in the wrongful conduct that has and will harm UCAR;

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1    6.    Attorneys' fees, witness fees and costs of litigation incurred by

2  UCAR;

3    7.    Costs of the suit incurred herein; and

4    8.    For such other and further relief as the Court deems just and proper.

5

6  Dated: March 28, 2017              */s/ Robert Harkins*

7                                    Korula T. Cherian, Cal. Bar No. 133697
                                     Song Zhu, Cal. Bar No. 257608
8                                    Robert Harkins, Cal. Bar No. 179525
                                     RuyakCherian LLP
9                                    1936 University Ave, Ste 350
                                     Berkeley, CA  94704
10                                   Telephone: (510) 944-0190
                                     bobh@ruyakcherian.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28