KORULA T. CHERIAN (SBN 133697)
sunnyc@ruyakcherian.com
SONG ZHU (SBN 257608)
songz@ruyakcherian.com
ROBERT M. HARKINS, JR. (SBN 179525)
bobh@ruyakcherian.com
RUYAKCHERIAN, LLP
1936 University Ave, Suite 350
Berkeley, CA 94704
Telephone: (510) 944-0190

Attorneys for Plaintiff
UCAR TECHNOLOGY (USA) INC., and UCAR INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UCAR TECHNOLOGY (USA), INC. a California corporation, and UCAR INC., a Chinese corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>YAN LI, an individual; HUA ZHONG, an individual; DA HUO, an individual; and ZHENZHEN KOU, an individual,<br><br>　　　　　Defendants. | Case No.<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**<br><br>**[PURSUANT TO FRCP RULE 65 & 18 U.S.C. § 1086]** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 2

III. THE COURT SHOULD ISSUE THE REQUESTED TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION TO AVOID IRREPARABLE DAMAGE TO UCAR ................................................................................................. 3

   A. UCAR is Likely to Succeed on the Merits ................................................ 3

      1. UCAR is Likely to Succeed on its Property Claim ................. 6

      2. UCAR is Likely to Succeed on its Contract Claims ................ 4

      3. UCAR is Likely to Succeed on its Trade Secrets Claims ....... 5

      4. UCAR is Likely to Succeed on its Fraud Claims .................... 7

      5. UCAR is Likely to Succeed on its Unfair Competition Claim ........................................................................................ 9

   B. Absent Preliminary Relief, UCAR Will Be Irreparably Harmed ................................................................................................... 10

   C. The Balance of Hardships Favors UCAR ............................................... 11

   D. The Public Interest Favors UCAR's Request for TRO and Preliminary Injunction ............................................................................ 11

IV. ALTERNATIVELY, THE COURT SHOULD GRANT EXPEDITED DISCOVERY ...................................................................................................... 12

V. CONCLUSION ................................................................................................... 14

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ................................................................................................ 3

*Allied N. Am. Ins. Brokerage Corp. v. Woodruff-Sawyer*, 2005 U.S. Dist. LEXIS 47388 *42 (N.D. Cal. Feb. 19, 2005) .............................................. 11

*Am. Legalnet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) ........ 13

*Bank of America, N.A. v. Lee*, 2008 WL 4351348 (C.D. Cal. Sept. 22, 2008) ................................................................................................ 12

*Berda v. Grand Lodge of IAM* ............................................................... 4

*Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066 (Cal. App. 1998) ...................... 7

*Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92-93 (3rd Cir. 1992) .......... 11

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) ................................................................................ 10

*CytoDyn of N.M., Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008) ................................................................................... 5

*Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1173 (Cal. App. 2016) ........................................................................... 4

*Dimension Data N. Am. V. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D. N.C. 2005) .............................................................................................. 13

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 696 (Cal. 1988) ......................... 4

*Gilder v. P.G.A. Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) ............................ 4

*Latona v. Aetna U.S. Healthcare, Inc.*, 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999) ............................................................................................ 13

*Lillge v. Verity*, 2007 WL 2900568 at *7 (Oct. 2, 2007 N.D. Cal.) ............... 11, 12

*Merrill Lynch, Pierce Fenner & Smith, Inc. v. Chung*, 2001 WL 283083 at *6 (C.D. Cal. Feb. 2, 2001) ................................................................ 12

*Moore v. Regents of the Univ. of Cal.*, 51 Cal.3d 120, 136 (Cal. 1990) ................ 7

*North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2nd Cir. 1999) ....... 11

*Plummer v. Day/Eisenberg, LLP,* 184 Cal.App.4th 38, 50 (Cal. 2010) ................. 7

*Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919 (D. Nev. 2006) .................. 11

*Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994) .......................... 10

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839

MPA ISO PL'S APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

n.7 (9th Cir. 2001) ............................................................................................. 3

*TMX Funding, Inc. v. Impero Technologies, Inc.*, 2010 WL 1028254, at *7 (March 18, 2010 N.D. Cal.) ..................................................................... 11

*Union Pacific R.R. Co. v. Mower*, 219 F.3d 1069, 1071 n.1 (9th Cir. 2000) ....... 11

*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (Cal. 1995) ...................... 5

*Western Directories, Inc. v. Golden Guide Directories, Inc.*, 2009 WL 1625945 at *6 (June 8, 2009 N.D. Cal.) .............................................. 11, 12

*Wilson v. Watt*, 703 F.2d 395 (9th Cir. 1983) ........................................................ 4

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) .......................... 3

**RuyakCherian LLP**
**1936 University Avenue, Suite 350**
**Berkeley, CA 94704**

## I. INTRODUCTION

Plaintiff UCAR Technology (USA) INC., and UCAR Inc. (collectively "Plaintiff" or "UCAR") seek a temporary restraining order and order to show cause why a preliminary injunction should not be issued against former UCAR employees, namely Defendants Yan Li, Hua Zhong, Da Huo, and Zhenzhen Kou (collectively "Defendants"). Defendants worked on a highly confidential, trade secret R&D project regarding auto-piloted vehicles while at UCAR, but this month indicated they are leaving because they could get $10 million of investment to take the project and start their own company. But the work product and all the proprietary data for more than 15,000 vehicles tracked by UCAR was UCAR's confidential information, and Defendants had (and have) no right to it.

To make matters worse, when they left, Defendants took with them the administrative level access to the UCAR servers. Furthermore, they wiped their company laptops, preventing UCAR from accessing its proprietary information on the laptops.

UCAR is being damaged every day that it cannot access that data and every day that Defendants are making use of trade secret and proprietary information that is not theirs to set up a venture to compete with UCAR. Given that Defendants destroyed UCAR property on their way out the door, there is imminent danger of additional destruction of property if a TRO does not issue immediately.

UCAR is very likely to succeed in its case that Defendants unlawfully took UCAR's confidential trade secrets and property. As a result, UCAR requests the Court's assistance in issuing a TRO and an order to show cause why it should not issue a preliminary injunction requiring Defendants to give UCAR back its property and access to the protected information on its servers and provide appropriate guarantees that they will not use the information from UCAR to work on auto-pilot projects that are based on UCAR trade secrets and proprietary information.

## II. STATEMENT OF FACTS

UCAR is one of the largest chauffeured car service providers in China. Like Uber and Lyft in the United States, in China UCAR provides a platform for ride-hailing to millions of people who use UCAR apps on iPhones and Android-enabled smart phones or use the UCAR website. UCAR is a technology company whose competitive advantage is based on its ability to continue to innovate. (Declaration of Zhiya Qian ["Qian Dec."], ¶ 3.) Some if its most mission critical projects include its ride-hailing software and analysis of large data sets related to vehicles in transit. (*Id.*)

To advance its technology, especially related to big data analysis, UCAR hired Defendants as a team of research and development engineers for UCAR's Silicon Valley office. Over time, the team began to work on important technological advances related to development of next-generation auto-pilot technologies. Defendants spent approximately one-and-a-half years and collectively received hundreds of thousands of dollars from UCAR to work on the company's trade secret technology development. What UCAR did not know was that Defendants were secretly setting the stage to steal UCAR's proprietary information, and the proprietary work they had done for UCAR, to set up a competing venture of their own.

In March 2017, UCAR first learned that Defendants were considering leaving the company, and then, on March 14, 2017, Defendants all abruptly resigned by email, taking UCAR's trade secrets and intellectual property, copying this information to other computers or copying data to local memory on non-UCAR computers through access to remote servers, reformatting their UCAR company computers, and denying UCAR administrative level access to its AWS account.

When confronted, Defendants effectively admitted that their actions were the product of simple greed: they had learned that if they took UCAR's property, they could obtain tens of millions of dollars of investment, so they did. UCAR sent Defendants cease and desist letters demanding that Defendants give back all UCAR's

trade secret information. Despite UCAR's demands, Defendants have not given back the UCAR data they took.

### III. THE COURT SHOULD ISSUE THE REQUESTED TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION TO AVOID IRREPARABLE DAMAGE TO UCAR

The legal standards for entry of either a temporary restraining order or preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A court may apply a sliding scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Each of these factors favors UCAR's requested relief here.

#### A. UCAR is Likely to Succeed on the Merits

To obtain a TRO or preliminary injunction, a plaintiff must show a likelihood of prevailing on the merits. *Wilson v. Watt*, 703 F.2d 395 (9th Cir. 1983). However, a plaintiff need not show how it will positively prevail on the merits. *Gilder v. P.G.A. Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). A "fair chance" of success is the standard for granting preliminary injunctive relief. *Berda v. Grand Lodge of IAM*, 584 F.2d 308, 315 (9th Cir. 1978).

Defendants' actions in this case—stealing UCAR's trade secrets and confidential information, destroying UCAR's property and proprietary information by wiping company laptops, and blocking UCAR from administrative level access to the AWS server — are so blatantly unlawful that the Court should have little trouble

concluding that UCAR has a likelihood of success.  UCAR only needs to show a likelihood of success on at least one claim to support the injunctive relief, but in fact UCAR is likely to succeed on many of its asserted claims.

### 1. UCAR is Likely to Succeed on its Contract Claims

UCAR has asserted claims for breach of contract and for breach of the covenant of good faith and fair dealing.  It is likely to succeed as to both.  "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1173 (Cal. App. 2016). "[T]he employment relationship is fundamentally contractual." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 696 (Cal. 1988).

Here, there is no dispute that Defendants were each employed by UCAR until they abruptly resigned.  Their employment agreements included a duty of loyalty and an agreement not to do outside work or work for the benefit of others.  But they performed work on the auto-pilot project for the benefit of their own new venture to compete with UCAR and sought investment for it.  They had no way to do this without the knowledge and data they had from UCAR, and this was a clear violation of their employment agreement.

Additionally, the covenant of good faith and fair dealing, implied by law in every contract, exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (Cal. 1995).  Every employment agreement also includes the provision that everything acquired by the employee except compensation belongs to the employer.  Cal. Labor Code, § 2860.  UCAR would be fundamentally deprived of the very basis of the employment agreement if Defendants could conduct R&D work only to take it with them and deprive UCAR of it.  UCAR is likely to succeed on the merits of this claim.

### 2. UCAR is Likely to Succeed on its Trade Secrets Claims

UCAR has alleged claims for trade secret misappropriation under both federal and state law.  The federal Defend Trade Secrets Act provides a right to a civil action for relief for misappropriation of trade secrets: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).  California trade secret law is codified by the CUTSA. See Cal. Civ. Code §§ 3426-3426.11. "To state a claim under the California Uniform Trade Secrets Act, a plaintiff must plead facts sufficient to show that: (1) the plaintiff owned a trade secret; (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means; and (3) the defendant's actions damaged the plaintiff." *VasoNova Inc. v. Grunwald*, 2012 U.S. Dist. LEXIS 133380, *5 (N.D. Cal. Dec. 11, 2012) (*citing CytoDyn of N.M., Inc. v. Amerimmune Pharm., Inc*., 160 Cal. App. 4th 288, 297 (2008)).  Under the California Uniform Trade Secrets Act, 'trade secret' means "information, including a... compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).  Both claims are viable: the federal law in this area does not preempt state law. *See* 18 U.S.C. § 1836(f).

Here, the existence of trade secrets are easily identified, and include at least the following:

    a.    Detailed proprietary data that UCAR collected from its network of more than 15,000 cars, which provided valuable insight into car operation and usage;

    b.    The software and testing data related to auto-piloted cars

developed by UCAR and the subsets of the larger data set usable for work on auto-pilot technology, as well as UCAR software developed to work with vehicle auto-pilot technology and the R&D work being done by Defendants for UCAR.

Data compilations like the car usage data, which is voluminous and proprietary, not publicly available but collected by UCAR and maintained as confidential, are classically considered to constitute trade secrets. *See CBS Interactive v. Etilize, Inc.,* 2009 Cal. Super. LEXIS 2262, *11 (L.A. County Super. Dec. 10, 2009) ("data compilations, such as those identified by Plaintiff, are subject to protection as trade secrets."). At UCAR, this data is protected and kept secret.

Additionally, research and development work, including queries on the UCAR database, software development, reporting, and other work done by the team on auto-pilot technologies, were matters maintained as confidential and trade secret by UCAR. Auto-piloting is a cutting-edge technological field, and the information developed by the R&D team was kept confidential. Thus, UCAR has shown that it has relevant trade secrets.

The other factors are easily established, because Defendants were the R&D team that had access to the UCAR database and performed the R&D work. The fact they deleted all the data from their laptops, and prevented UCAR from denying them access to the AWS server, is strong circumstantial evidence that they still have possession of that trade secret information. UCAR is being damaged because Defendants are able to use that information to compete with UCAR even though they should not have it at all.

### 3. UCAR is Likely to Succeed on its Property Claim

UCAR has asserted a claim for property conversion that is causing it ongoing damage. "To establish a conversion, plaintiff must establish an actual interference with his ownership or right of possession. . . . Where plaintiff neither has title to the

property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion." *Moore v. Regents of the Univ. of Cal.*, 51 Cal.3d 120, 136 (Cal. 1990) (internal citations omitted). "[A]ny act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion." *Plummer v. Day/Eisenberg, LLP,* 184 Cal.App.4th 38, 50 (Cal. 2010). "Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066 (Cal. App. 1998) (internal citations omitted).

Here, Defendants destroyed all the data on their UCAR laptops when they left. Each of the Defendants was an employee of UCAR, and the data on those laptops was UCAR property. "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment." Cal. Labor Code, § 2860. The protected data on the AWS servers, including the work product created by Defendants while employed at UCAR, is similarly UCAR property. Yet Defendants prevent UCAR from denying their access to that data. Therefore, they are directly interfering with it. To the extent Defendants continue to be able to access the AWS servers even after they are no longer employed, they continue to have the ability to take what is not theirs. And to the extent Defendants retain their own copies of UCAR information on other media, when they have no right to do so, that also constitutes conversion. UCAR is highly likely to succeed on this claim.

### 4. UCAR is Likely to Succeed on its Fraud Claims

UCAR has alleged two fraud-related claims under federal and state law. To prove a violation of the federal Computer Fraud and Abuse Act, which is codified at

18 U.S.C. § 1030.  A person violates this law by "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." *Id*. § 1030(a)(4). "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." *Id.* § 1030(g).  Here, there are multiple reasons Defendants are liable for federal law violations.  They destroyed the information on their UCAR laptop computers without authorization to do so, thereby depriving the company of that information.  They deny UCAR administrative access to the AWS server.  It also appears that they took UCAR's trade secrets and proprietary information with them or they would not be able to attract investment, and since they have the only administrative rights to the protected database, it is likely they continue to access it without authorization even now.  Each of these constitutes an actionable violation of the Computer Fraud and Abuse Act.

Additionally, state law fraud applies here.  Proof of fraud has four elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e*., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc*.,15 Cal.4th 951, 974 (1997).  Here, at some point, Defendants started courting investment while they were still working at UCAR.  Before they left, they told UCAR's COO that they were obtaining at least $10 million in investment to leave UCAR and start a competing venture. They made preparations to leave and take UCAR's trade secret and proprietary information, including their own work product as employees, with them.  They concealed this information from UCAR and continued to represent that they were working for UCAR when they had really begun working for their own competing venture, which is further evinced by the fact that they left and destroyed the data on their laptops on the way out.  UCAR would not

have continued to pay the Defendants and provide them ongoing access to its trade secret and proprietary data if Defendants had told the truth. Thus, UCAR is likely to succeed on its state law fraud claim as well.

### 5. UCAR is Likely to Succeed on its Unfair Competition Claim

Under California's Unfair Competition Law, "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203. The word "unfair" in Section 17200 reaches any conduct that significantly threatens or harms competition, even conduct not specifically prohibited by some other law. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). "Unfair competition" is defined, in part, as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Unlawful" practices are those prohibited by law, whether civil or criminal; "unfair" practices are those whereby harm to the victim outweighs its benefits; and "fraudulent" practices only require that the public is deemed likely to be deceived. *See Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994).

Defendants' use of UCAR proprietary data, their theft of the work product created by Defendants while employed at UCAR, and their work on any non-UCAR auto-pilot project based on UCAR proprietary information, clearly violate each of the three separate prongs for finding a violation of California's Unfair Competition Law. Defendant's misappropriation of UCAR's trade secrets is unlawful under applicable federal and state law. Moreover, Defendants deceived UCAR by continuing to "work" for UCAR and collect salary while secretly obtaining outside funding commitments and planning to leave and take UCAR property to start a competing venture.

UCAR is thus likely to succeed on its unfair competition claim, because Defendant's misuse and unauthorized disclosure of UCAR trade secrets constitutes unlawful, deceptive and unfair competition and business practices in violation of the

law. Should this court not issue an injunction—relief specifically enumerated in the statute, *see* Cal. Bus. & Prof. Code § 17203—Defendants will continue to misuse Plaintiff's confidential and proprietary information and engage in similar acts of unfair competition in the future, to the harm of Plaintiff and the general public. Plaintiff is likely to succeed on the merits of this claim.

### B. Absent Preliminary Relief, UCAR Will Be Irreparably Harmed

The courts consistently hold that disclosing confidential information or trade secrets would create irreparable injury: "[A]n intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost always certainly show irreparable harm." *Campbell Soup Co. v. ConAgra, Inc*., 977 F.2d 86, 92-93 (3rd Cir. 1992); *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2nd Cir. 1999) (loss of trade secrets cannot be measured in money damages). Disclosure of non-trade secret confidential information is similarly recognized as a serious harm. *Union Pacific R.R. Co. v. Mower*, 219 F.3d 1069, 1071 n.1 (9th Cir. 2000). These harms, which are not readily addressed through payment of economic damages, are sufficient to meet the irreparable injury requirement for a preliminary injunction. *Saini v. Int'l Game Tech*., 434 F. Supp. 2d 913, 919 (D. Nev. 2006).

"Several cases indicate that use of confidential information by a former employee in order to compete with their former employer represents irreparable harm." *Allied N. Am. Ins. Brokerage Corp. v. Woodruff-Sawyer*, 2005 U.S. Dist. LEXIS 47388 *42 (N.D. Cal. Feb. 19, 2005). California courts have also presumed irreparable harm when proprietary information is misappropriated. *TMX Funding, Inc. v. Impero Technologies, Inc*., 2010 WL 1028254, at *7 (March 18, 2010 N.D. Cal.); *Western Directories, Inc. v. Golden Guide Directories, Inc*., 2009 WL 1625945 at *6 (June 8, 2009 N.D. Cal.); *Lillge v. Verity*, 2007 WL 2900568 at *7 (Oct. 2, 2007 N.D. Cal.) Here, Defendants have appropriated confidential information, trade secrets, and UCAR IP, illicitly using that information for the very purpose of competing with UCAR.

### C. The Balance of Hardships Favors UCAR

The balance of hardships issue tips markedly in favor of UCAR. UCAR has a vital interest in protecting its confidential, proprietary, and trade secret information and preventing competitors from using that information. Moreover, Defendants have no legitimate right to use Plaintiff's proprietary information to their own benefit. UCAR would be greatly harmed if injunctive relief is not granted. "[T]he risk of losing business and being deprived of the benefit of its proprietary information constitutes a substantial hardship on the part of plaintiff." *Lillge,* 2007 WL 2900568 at *7. Absent a TRO and preliminary injunction, Defendants would be able to continue to unlawfully use UCAR's confidential, proprietary, trade secret information in furthering the interests of UCAR's competitors (namely, a competing venture they themselves have begun based entirely on UCAR's property). Such use would be inconsistent with the obligations Defendants had under the Labor Code and their employment agreements.

In contrast, Defendants will not suffer legitimate hardship as a result of an issuance of an injunction prohibiting it from doing what it could not lawfully do in the first instance. "Defendants would not suffer hardship if the Court entered a narrowly tailored injunction prohibiting them from employing unlawful means to compete against Plaintiff." *Western Directories, Inc. v. Golden Guide Directories, Inc.*, 2009 WL 1625945 at *7 (N.D. Cal. June 8, 2009); *see also Merrill Lynch, Pierce Fenner & Smith, Inc. v. Chung*, 2001 WL 283083 at *6 (C.D. Cal. Feb. 2, 2001) (stating that "the balance of hardships tips heavily in favor of granting injunctive relief because an injunction merely prohibits Defendants from misappropriating the trade secrets of [Plaintiff]").

### D. The Public Interest Favors UCAR's Request for TRO and Preliminary Injunction

Here, the public interest supports issuance of a TRO and Preliminary injunction. California courts routinely recognize that public interest favors the

protection of trade secrets and other proprietary business information. *Chung*, 2001 WL 283083 at *6 (holding that injunction that protects "trade secret client lists and other confidential and trade secret information" promotes the public interest); *Bank of America, N.A. v. Lee*, 2008 WL 4351348 (C.D. Cal. Sept. 22, 2008) ("the public interest lies in favor of protecting plaintiffs' trade secrets"). Moreover, though California has a strong public policy in favor of vigorous competition, that interest "yields to California's interest in protecting a company's trade secrets." *Id*. (*citing Latona v. Aetna U.S. Healthcare, Inc.*, 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999)).

## IV.  ALTERNATIVELY, THE COURT SHOULD GRANT EXPEDITED DISCOVERY

Were, despite the above showing, the Court to find the record insufficient to grant the requested relief, UCAR then requests that it be authorized to undertake narrowly tailored, expedited discovery to establish the necessary evidence. Rule 26(d) of the Federal Rules of Civil Procedure allows the Court to authorize expedited discovery before a Rule 26(f) conference for "convenience and in the interest of justice." Fed. R. Civ. P. 26(d)(2); see also Advisory Committee Notes to the 1993 amendments to Rule 26(d) (Discovery before the Rule 26(f) conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction . . ."). The standard for authorizing expedited discovery is "good cause." *Semitool, Inc. v. Tokyo Electron America*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) ("[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). In cases where preliminary injunction motions are pending, courts often permit expedited discovery designed to obtain information required for the preliminary injunction." *See Dimension Data N. Am. V. NetStar-1, Inc*., 226 F.R.D. 528, 532 (E.D. N.C. 2005).

In considering whether good cause exists, factors courts may consider include "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery

request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. Legalnet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009). Under this standard, UCAR's request for expedited discovery should be granted. UCAR seeks the expedited discovery in connection with its request for preliminary injunction. UCAR would seek narrowly tailored discovery into the following subject matter: (1) Defendants' designing or developing, whether directly or indirectly, or contributing to the design or development of auto-pilot technology outside of UCAR after November 1, 2016; (2) Defendants work product generated as a result of the auto-pilot project including software, data sets, database queries and other work product ("Work Product"); (3) Defendants' use of Work Product after their resignations on March 14, 2016; (4) Defendants' disclosure of Work Product to any UCAR competitor or other third party including investors or prospective investors; (5) Defendants' disclosure to any UCAR competitor or other third party of any information received from UCAR during Defendants' employment.

UCAR's discovery requests would be limited to a request for documents and depositions of each of the Defendants regarding the above subject matter. The purpose of discovery into the above areas is to establish the additional evidence necessary, if any, to support a preliminary injunction prohibiting Defendants from (a) directly or indirectly, designing or developing, or contributing to the design or development of any projects that compete with UCAR (hereinafter "Competing Projects"); (b) enjoining Defendant from using UCAR's confidential information or trade secrets in connection with the Competing Projects, and (c) enjoining Defendant from using, divulging, furnishing, or otherwise making accessible to any person UCAR's confidential information or trade secrets in connection with the Competing Projects.

Because the expedited discovery is narrowly tailored, there is little burden to Defendants. Moreover, given the circumstances, evidence of Defendants' acts is

particularly within Defendants' knowledge and possession and cannot be reasonably obtained by UCAR through other means.

## V.  CONCLUSION

For all the reasons set forth above, UCAR respectfully requests that the Court (1) issue a temporary restraining order restraining and enjoining Defendants from (a) denying UCAR administrative level access to its AWS account; (b) keeping any copies of UCAR confidential information including data and work product developed by Defendants while in the employ of UCAR, including a requirement to return all such copies to UCAR; (c) directly or indirectly, designing or developing, or contributing to the design or development of any Competing Projects; (d) using UCAR's confidential information or trade secrets in connection with Competing Projects, and (e) using, divulging, furnishing, or otherwise making accessible to any person UCAR's confidential information or trade secrets in connection with Competing Projects; (2) issue an order to show cause why a preliminary injunction should not issue.

Dated: March 28, 2017

*/s/ Robert Harkins*
Robert Harkins, Cal. Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste 350
Berkeley, CA  94704
Telephone: (510) 944-0190
bobh@ruyakcherian.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 28th day of March, 2017, with a copy of this document via the Court's EM/ECF system.  Any other counsel of record will be served by electronic mail, facsimile and/or first class mail on the same date.

*/s/ Robert Harkins*
Robert Harkins

RuyakCherian LLP
1936 University Ave, Ste 350
Berkeley, CA  94704
Telephone: (510) 944-0190
bobh@ruyakcherian.com