UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UCAR TECHNOLOGY (USA) INC., et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>YAN LI, et al.,<br><br>       Defendants. | Case No.  5:17-cv-01704-EJD<br><br>**ORDER DISCHARGING ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION** |

Plaintiffs UCAR Inc. and UCAR Technology (USA) Inc. (collectively "UCAR") comprise "one of the largest chauffeured car service providers in China," offering ride-hailing services much like those of Uber and Lyft in the United States. Compl. ¶ 1, Dkt. No. 1. UCAR considers some of its most critical projects to be its ride-hailing software and its analysis of large data sets related to vehicles in transit. Id. UCAR brings this action against four of its former employees, Yan Li, Hua Zhong, Da Huo, and Zhenzhen Kou (collectively, "Defendants"),[1] for violation of the Defend Trade Secrets Act, Misappropriation of Trade Secrets, and related claims arising from Defendants' recent resignation and departure from UCAR. See id.

On March 28, 2017, UCAR filed an Ex Parte Application for a Temporary Restraining Order ("TRO") seeking to enjoin Defendants from (1) keeping or using UCAR's proprietary information, and (2) denying UCAR administrative level access to its servers. See Dkt. No. 6-1

---

[1] Defendants are all accomplished engineers who were employed by UCAR as part of a research and development team at its Silicon Valley offices in the United States. See Compl. ¶¶ 5-8, 15-18; Opp. at 3. Defendants work primarily entailed "software coding and program/project management relating to big data analysis and later autopilot technologies for UCAR." Id. ¶¶ 15-18. On March 14, 2017, Defendants all resigned from UCAR. Id. ¶ 1; TRO App. at 2.

1
Case No.: 5:17-cv-01704-EJD
ORDER DISCHARGING ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

("TRO App.") at 14. UCAR's TRO Application alleged that upon their resignation from the company on March 14, 2017, Defendants each "reformatted" their company-issued laptops, effectively deleting any data and information previously stored on the computers. Id. at 2. The TRO Application further alleged that even after their resignation, Defendants accessed, downloaded, and retained UCAR's trade secrets and intellectual property; denied UCAR administrative access to its own Amazon Web Services ("AWS") servers;[2] and used or intended to use UCAR's proprietary information to set up and benefit a competing venture of their own. Id. at 2, 3, 6, 8; see also Dkt. No. 34 ("Pl. Response") at 2-3. UCAR asserted that Defendants had "effectively admitted" their intent to use UCAR's property. TRO App. at 2.

Based on these allegations, the court found that UCAR's ex parte allegations justified the relief requested and issued a TRO and Order to Show Cause ("OSC") to Defendants. See Dkt. No. 17. Defendants filed a timely response to the OSC, opposing the issuance of an injunction. Dkt. No. 31 ("Opp.").

Having now carefully reviewed the relevant pleadings filed by the parties, the court finds, concludes, and orders as follows:

1.  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"). "To obtain a preliminary injunction, the moving party 'must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest." Idaho v. Coeur D'Alene Tribe, 794 F.3d 1039, 1046 (9th Cir. 2015) (quoting Pom Wonderful LLC v. Hubbard,

---

[2] Based on the parties' declarations, as well as the representations of UCAR's counsel at the hearing held in this in this matter on April 19, 2017, the court notes that any issues regarding access to UCAR's servers has been resolved.

775 F.3d 1118, 1124 (9th Cir. 2014)).

2. Alternatively, a preliminary injunction is also appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor." Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1049 (9th Cir. 2010). "These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases." Big Country Foods, Inc. v. Board of Educ. of the Anchorage Sch. Dist., 868 F.2d 1085, 1088 (9th Cir. 1989). But "[u]nder either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury." Id. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." Id.

3. Whether to grant or deny a preliminary injunction is a matter within the court's discretion. See Miss Universe, Inc. v. Flesher, 605 F.2d 1130, 1132-33 (9th Cir. 1979).

4. The second Winter factor - which is arguably the "single most important prerequisite for the issuance of a preliminary injunction" (Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005)) - requires the moving plaintiff "to demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22 (emphasis in original). An injunction ordered on any lesser showing is "inconsistent" with the "characterization of injunctive relief as an extraordinary remedy." Id.

5. In assessing whether a plaintiff has demonstrated that it is likely to suffer irreparable harm in the absence of injunctive relief, the court is mindful that the plaintiff must make a "clear showing of irreparable harm." Garcia v. Google, 786 F.3d 733, 746 (9th Cir. 2015). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). Indeed, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to

preliminary injunctive relief." Id. "Subjective apprehensions and unsupported predictions of revenue loss are not sufficient to satisfy a plaintiff's burden of demonstrating an immediate threat of irreparable harm." Id. at 675-76.

6. Here, UCAR contends that it has shown irreparable harm under either of two theories: (1) "Defendants admit that [they] destroyed company property on multiple occasions" and therefore may continue to do so as part of a "pattern of destruction" unless the court enjoins such actions (the preservation theory); and (2) Defendants "planned" to take and disclose UCAR's confidential information to a competing company, which would irreparably damage the "competitive advantage" UCAR's proprietary data has given it in the current market (the disclosure theory). Pl. Response at 5. These contentions are too speculative and are not sufficiently supported by evidence to satisfy UCAR's burden of establishing irreparable injury.

7. As to the preservation theory, there is no dispute that Defendants reformatted their laptops when they left UCAR, effectively erasing the data and records contained on the computer. However, UCAR fails to identify any data or records that were actually lost as a result of the reformat. Defendants each affirm in their respective declarations that it was their practice to store their work on UCAR's servers – either the Phabricator or a server located in UCAR's California office – and regularly uploaded their completed work product to such servers. Zhong Decl. ¶¶ 45-56, Dkt. No. 30-19; Huo Decl. ¶¶ 26-30, Dkt. No. 30-21; Kou Decl. ¶¶ 30-34, Dkt. No 30-23; Li Decl. ¶¶ 51-69, Dkt. 30-3. All Defendants further attest that it was not their practice to store work on their local hard drive, and none of them are aware of any relevant work that would have still been located on the UCAR-issued laptop at the time of their resignations. Id. UCAR does not provide any reason to doubt the accuracy or truthfulness of Defendants' statements in this regard.

Similarly, Mr. Li admits that he deleted certain UCAR files after having downloaded them to his wife's computer, but explains that he did so because he realized that the files may actually be UCAR's work product, which he contends were inadvertently downloaded. Li Decl. ¶¶ 136-139. Again, UCAR does not allege specific facts or provide evidence to suggest that Mr. Li's

actions permanently erased any data that UCAR does not have stored elsewhere, or that Mr. Li remains in possession of additional data that is now at imminent risk of being destroyed.

8.     As to UCAR's disclosure theory, the court acknowledges that UCAR has a legitimate interest in protecting its proprietary information from disclosure and that some of Defendants' conduct raises valid concerns in this regard.  Specifically, Mr. Li admits to having logged on to UCAR servers after formally resigning from the company, admits to having downloaded (even if inadvertently) certain UCAR files, and admits to having deleted this information after realizing what it was.  See Li Decl. ¶¶ 136-139.  There is also some evidence to suggest that Defendants may have retained or otherwise had in their possession (even if inadvertently) other UCAR data after having resigned from the company.  See id.; Huo Dec. ¶ 69; Kou Dec. ¶ 73.  And there is no dispute that all Defendants joined a new startup company that could become a competitor to UCAR.  See Opp. at 6-7.

While courts have found that the use of one company's trade secrets by a former employee at a competitor company may satisfy the irreparable harm necessary for injunctive relief, there is little evidence in the record showing why it is likely that Defendants will use or disclose UCAR's proprietary information in that way.  See Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92-93 (3rd Cir. 1992) (explaining that while "an intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost certainly show irreparable harm," there was no evidence that the defendant was "about to use the technology" that the plaintiff to protect sought). In fact, the declarations provided by the Defendants in this regard state under oath that they do not intend to use UCAR's proprietary information.  Specifically, Defendants have all submitted sworn declarations representing that they "have no intent to use UCAR's information, and have not misused UCAR's information."  Li Decl. ¶ 149; Zhong Decl. ¶ 107; Huo Decl. ¶ 72; Kuo Decl. ¶ 77. Each of Defendants' declarations further state, "To the best of my knowledge and after a reasonable search, I do not believe I have any remaining UCAR property in my possession."  Li Decl. ¶¶ 148; Huo Decl. ¶ 71; Kuo Decl. ¶ 76; see also Zhong Decl. ¶ 106 ("I do not have any

1  remaining UCAR property in my possession."). UCAR's suspicion or speculation as to the

2  truthfulness of these representations is insufficient to warrant injunctive relief.

3      9.    In sum, UCAR has offered no proof that there is an imminent threat of use or

4  disclosure of its confidential information or trade secrets. In light of these shortcomings, UCAR

5  has not demonstrated that irreparable harm is *likely*, rather than just *possible*.

6      10.    Since the court finds that UCAR's description of potential ensuing harm is not the

7  type of "immediate threatened injury" required for a preliminary injunction, it need not address the

8  other Winter factors. See Leiva-Perez v. Holder, 640 F.3d 962, 965 (9th Cir. 2011) (holding that

9  injunctive relief may not issue absent a "threshold showing regarding irreparable harm . . .

10 regardless of the petitioner's proof regarding the other [] factors"); see also Blackburn v. State

11 Dep't of Soc. & Health Servs., 472 Fed. Appx. 569, 570-71 (9th Cir. 2012).

12     Based on the foregoing, UCAR has not met its burden to demonstrate a clear entitlement to

13 injunctive relief. Accordingly, a preliminary injunction will not issue and the Order to Show

14 Cause for Preliminary Injunction is hereby DISCHARGED.

**IT IS SO ORDERED.**

Dated: April 19, 2017

                                              EDWARD J. DAVILA
                                              United States District Judge

Case No.: 5:17-cv-01704-EJD
ORDER DISCHARGING ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION