1   Korula T. Cherian (SBN 133697)
    sunnyc@ruyakcherian.com
2   Song Zhu (SBN 257608)
    songz@ruyakcherian.com
3   Robert M. Harkins, Jr. (SBN 179525)
    bobh@ruyakcherian.com
4   RUYAKCHERIAN, LLP
    1936 University Ave, Suite 350
5   Berkeley, CA  94704
    Telephone: (510) 944-0190
6
7   Attorneys for Plaintiffs
    UCAR TECHNOLOGY (USA) INC.,
    and UCAR INC.
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  UCAR TECHNOLOGY (USA) INC., a        Case No.  5:17-cv-01704-EJD
    California corporation, and UCAR INC., a
12  Chinese corporation,                 **PLAINTIFFS' OPPOSITION TO**
                                          **DEFENDANTS' MOTION TO DISMISS**
13              Plaintiffs,
                                          Hearing Date:  Sept. 7, 2017
14         v.                             Time:   9:00 a.m.
                                          Courtroom: 4
15  YAN LI, an individual; HUA ZHONG,     Hon. Edward J. Davila
    an individual; DA HUO, an individual;
16  and ZHENZHEN KOU, an individual,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA  94704

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARDS ....................................................................................... 1

    A.      Rule 12(b)(6) Motions to Dismiss Test the Legal Sufficiency of the Complaint, Drawing All Inferences in Favor of UCAR .................................... 1

    B.      Defendants' Attempt to Rely on Facts to Contradict the Pleadings Is Improper and Should Be Denied........................................................................ 2

    C.      Leave to Amend Is Liberally Granted, Especially When the Complaint Has Not Previously Been Amended .............................................................. 3

III.    BACKGROUND FACTS ................................................................................... 4

IV.     THE CLAIMS IN THE COMPLAINT ARE WELL-FOUNDED AND NOT SUBJECT TO DISMISSAL ...................................................................... 6

    A.      The Complaint Allegations and Submitted Evidence Support UCAR's California Trade Secret Claim ..................................................................... 6

        1.      Defendants' Inevitable Disclosure Argument Is Misplaced ................... 6

        2.      The Complaint and Submitted Evidence Supports UCAR's California Trade Secret Claim ................................................................. 8

    B.      The Complaint Allegations and Submitted Evidence Support Federal Trade Secret Claim ...................................................................................... 10

    C.      The Complaint Properly Pleads a Claim for Conversion................................... 11

    D.      The Complaint Properly Pleads a Claim Under the Computer Fraud and Abuse Act................................................................................................ 14

    E.      The Complaint Properly Pleads a Claim for State Common Law Fraud.......... 16

    F.      The Complaint Properly Pleads a Claim for Breach of Fiduciary Duty ............ 17

    G.      The Complaint Properly Pleads a Claim for Breach of Contract...................... 18

    H.      The Complaint Properly Pleads a Claim for Breach of the Covenant of Good Faith and Fair Dealing.................................................................... 20

    I.      The Complaint Properly Pleads a Claim for Unfair Competition..................... 21

V.      WERE THE COURT TO FIND ANY CLAIM INSUFFICIENTLY PLED, IT SHOULD GRANT LEAVE TO AMEND ................................................... 22

VI.     CONCLUSION.................................................................................................. 22

**RuyakCherian LLP**
**1936 University Avenue, Suite 350**
**Berkeley, CA 94704**

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Ahdom v. Lopez*, 2016 U.S. Dist. LEXIS 125202 (E.D. Cal. 2016) ......................................... 3

*Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commun., Inc*., 2011 U.S. Dist. LEXIS 122420 \*25-26, 2011 WL 5025178 (S.D. Cal. Oct. 21, 2011) ...................... 12

*Angelica Textile Services, Inc. v. Park,* 220 Cal. App. 4th 495, 508 (2013) ........................... 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ................... 2

*Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.,* 2017 WL 412524, \*8 (N.D. Cal. Jan. 31, 2017) .................................................................................... 11

*Axis Imex, Inc., v. Sunset Bay Rattan, Inc*., No. C 08-3931, 2009 U.S. Dist. LEXIS 2667, 2009 WL 55178, at \*5 (N.D. Cal. January 7, 2009) ........................................... 12

*Balistreri v. Pacifica Police Dept.,* 901 F.2d 696 (9th Cir. 1990) ............................................ 2

*Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327, 345 (Cal. 1966) ............................................ 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................................................................................................ 2

*Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066 (Cal. App. 1998) ....................................... 11

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,* 295 F. Supp. 2d 430, 437 (D. De. 2003) ................................................................................................ 12

*CBS Interactive v. Etilize, Inc.,* 2009 Cal. Super. LEXIS 2262, \*11 (L.A. County Super. Dec. 10, 2009) ................................................................................................ 9

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) .............................................................................................................. 21

*Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996) .............................................................. 22

*City of Royal Oak Retirement System v. Juniper Networks, Inc*., 880 F.Supp.2d 1045 (N.D. Cal. 2012) ..................................................................................... 3, 7

*Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.,* 985 F. Supp. 827, 830 (N.D. Ill. 1997) ......................................................................................................... 12

*CytoDyn of N.M., Inc. v. Amerimmune Pharm., Inc*., 160 Cal. App. 4th 288, 297 (2008) .......... 8

*de Fontbrune v. Wofsy*, 2016 U.S. App. LEXIS 20416 \*16 (9th Cir. Cal. Nov. 14, 2016) ......... 3

*Division of Labor Law Enforcement v. Siskiyou Mills*, 229 Cal. App. 2d 105, 110 (1964) ............................................................................................................. 11

*DTS Brand Energy & Infrastructure Servs. v. Irex Contr. Grp.,* 2017 U.S. Dist. LEXIS 43497 (E.D. Pa. Mar. 23, 2017) ..................................................................... 10

*Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) ......................... 3

*Engalla v. Permanente Medical Group, Inc.*,15 Cal.4th 951, 974 (1997)................................. 16

*ESG Capital Partners, LP v. Stratos,* 828 F.3d 1023, 1032 (9th Cir. 2016) ............................ 15

*E-Smart Techs., Inc. v. Drizin*, 2009 U.S. Dist. LEXIS 272 at *19-20 (N.D. Cal. Jan. 5, 2009) ...........................................................................................................................12

*Ewiz Express Corp. v. Ma Labs, Inc.,* 2015 WL 5680904, *7 (N.D. Cal. Sept. 28, 2015)........ 15

*Fearon v. Department of Corrections,* 162 Cal.App.3d 1254, 1257 (1984)............................. 11

*Genzyme Corp. v. Bishop*, 463 F. Supp. 2d 946, 949 (W.D. Wis. 2006)................................. 12

*Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011 (C.D. Cal. 2015) .................... 3, 7

*Graham-Sult v. Clainos*, 738 F.3d 1131, 1143 (9th Cir. 2013) ................................................ 17

*Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877 (9th Cir. 1999).................................................. 4

*In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) ........... 3

*Innospan Corp. v. Intuit, Inc.,* 2011 U.S. Dist. LEXIS 29122, *8 (Mar. 8, 2011) ................... 13

*Keystone Fruit Mktg. v. Brownfield*, 2007 U.S. Dist. LEXIS 22018, *6-7 (E.D. Wash. Mar. 14, 2007).......................................................................................................... 13

*Lingsch v. Savage*, 213 Cal. App. 2d 729, 735 (1963) ............................................................ 16

*Loop AI Labs Inc v. Gatti,* 2015 U.S. Dist. LEXIS 117330, *10 (N.D. Cal. Sept. 2, 2015) ............................................................................................................................ 13

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009)..................................... 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008).................. 1, 6, 15

*Mendia v. Garcia*, 165 F. Supp. 3d 861, 873 (N.D. Cal. 2016)................................................. 4

*MH Pillars Ltd. v. Realini*, 2017 U.S. Dist. LEXIS 33450 (N.D. Cal. Mar. 8, 2017).............. 18

*Moore v. Regents of the Univ. of Cal.*, 51 Cal.3d 120, 136 (Cal. 1990) ........................... 11, 12

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990)............................... 3

*Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990).................... 22

*North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578 (9th Cir. 1983) ................................. 1

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, (2007) 157 Cal.App.4th 835, 845 (2007) .......................................................................... 16

*Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) ............................................................................................................................ 20

*Plummer v. Day/Eisenberg, LLP,* 184 Cal.App.4th 38, 50 (Cal. 2010). .................................. 11

*PQ Labs, Inc. v. Yang Qi*, 2014 U.S. Dist. LEXIS 139342, *29-*31 (N.D. Cal. Aug. 23,

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

2013) ............................................................................................................ 17, 21

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) ................................ 1

*Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994) .................................. 21

*Schlage Lock Company v. Whyte,* 101 Cal. App. 4th 1443, 1456-58 (2002) ............................ 7

*Sepehry-Fard v. elect Portfolio Servicing, Inc.*, 2016 U.S. Dist. LEXIS 112542, 2016
    WL 4436312 (N.D. Cal. Aug. 23, 2016) ......................................................... 3

*Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210 (2010)......................................... 13

*Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995).......................................... 17

*Stone Castle Fin. v. Friedman, Billings, Ramsey & Co.,* 191 F. Supp. 2d 652, 658-659
    (E.D. Va. 2002) ............................................................................................ 12

*Strom v. U.S.*, 641 F.3d 1051, (9th Cir. 2011) ............................................................. 1

*Thrifty-Tel, Inc. v. Bezenek,* 46 Cal. App. 4th 1559 (1996) ................................................ 13

*United States v. Nosal*, 844 F.3d 1038 (9th Cir. 2016) ................................................... 14

*United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014) ............................... 6

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)......................................... 2, 15

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 2017 U.S. Dist. LEXIS 70115
    (N.D. Cal. 2017)....................................................................................... 4

*VasoNova Inc. v. Grunwald*, 2012 U.S. Dist. LEXIS 133380, *5 (N.D. Cal. Dec. 11,
    2012) .................................................................................................... 8

*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (Cal. 1995)................................... 19, 20

*Zoumboulakis v. McGinn*, 148 F. Supp. 3d 920, 925 (N.D. Cal. 2015)................................. 18

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

I.      INTRODUCTION

Defendants have admitted destroying UCAR property and taking UCAR proprietary information.  They left their secret research and development positions at UCAR that involved trade secrets regarding self-driving vehicles.  Prior to doing so, they agreed to help start up a competing company in the same field.  When confronted that they were planning to take UCAR confidential information to the competitor, they did not dispute the accusation, a tacit admission that they were in fact planning to do so. They destroyed all the data on their laptops as they left.  They took the administrative rights to access UCAR servers with them, and what work product they left behind was indecipherable. They admitted that they took vast amounts of UCAR trade secret information from UCAR even after they resigned, as well as security access badges and other company property.  Not only is the Complaint well-founded, Defendants have already admitted facts showing they are liable.

Defendants' motion is not based on the facts as pled in the Complaint, but instead on their own version of facts viewed in the light most favorable to them, thereby employing the *opposite* of the correct legal standard on a motion to dismiss.  Properly viewed as pled, and with inferences drawn in UCAR's favor as required by law, it is clear the motion to dismiss is without merit, and it should be denied in its entirety.  Alternatively, leave to amend is liberally granted, and were the Court to agree with Defendants as to any of the claims in the Complaint, UCAR should be permitted to amend those claims.

II.     LEGAL STANDARDS

A.      Rule 12(b)(6) Motions to Dismiss Test the Legal Sufficiency of the Complaint, Drawing All Inferences in Favor of UCAR

In ruling on a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of a complaint. *Strom v. U.S.*, 641 F.3d 1051, 1067 n.17 (9th Cir. 2011) (*citing Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)); *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). The court may dismiss based on a lack of a cognizable legal theory, or the absence of

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1   sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d

2   696, 699 (9th Cir. 1990).

3          To defeat a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a plaintiff need only allege

4   sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

5   *Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial

6   plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable

7   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

8   129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The plausibility standard does ***not*** mandate that

9   the pleading meet the level of probability. *Id*.

10         **B.      Defendants' Attempt to Rely on Facts to Contradict the Pleadings Is Improper
                      and Should Be Denied**

11

12         It is improper to inject alleged, self-serving facts into a motion to dismiss, but that forms the

13  core basis of Defendants' motion.[1]  Defendants wrongly rely on facts stated in their own

14  declarations, a notion that has been repeatedly rejected by courts.  The facts asserted by Defendants

15  to support their motion have not been subject to any scrutiny because discovery has not yet begun

16  in this case, no documents have been exchanged, and no depositions taken.  Defendants note that

17  under Federal Rule of Evidence 201, courts may take judicial notice of facts that are "not subject to

18  reasonable dispute." However, they neglect to provide the proper law regarding what would allow

19  for judicial notice under this rule.

20         Facts are indisputable, and thus subject to judicial notice, ***only*** if they are either "generally

21  known" under Rule 201(b)(1) or "capable of accurate and ready determination by resort to sources

22  whose accuracy cannot be reasonably questioned" under Rule 201(b)(2).  **Facts about events in**

23  **declarations "do not remotely fit the requirements of Rule 201."** *United States v. Ritchie*, 342

24  F.3d 903, 909 (9th Cir. 2003).  "A high degree of indisputability is an essential prerequisite for a

---

25  [1] Defendants also filed a request for judicial notice.  UCAR does not object to that request,
    because Defendant did not request judicial notice of their own declarations.  However, their
26  motion relies extensively on representations of fact from their own declarations.  While
    admissions in those declarations may be used against Defendants pursuant to the same law
27  cited by Defendants in their request for judicial notice, their own self-serving statements
    cannot be used to support a motion to dismiss the Complaint.  In contrast, the statements made
    in the Qian and Zhang declarations (that are the subject of the judicial notice request) merely
28  provide more detailed support for UCAR's claims and provide additional facts that support
    denial of the motion.

court to take judicial notice of a particular fact." *Gerritsen v. Warner Bros. Entm't Inc*., 112 F. Supp. 3d 1011, 1031 (C.D. Cal. 2015) (quoting Advisory Committee notes to Rule 201). "Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss" when they constitute evidence not incorporated into the complaint by reference or a proper subject of judicial notice. *Id..,* at 1021; *see also City of Royal Oak Retirement System v. Juniper Networks, Inc*., 880 F.Supp.2d 1045, 1060 (N.D. Cal. 2012) (granting motion to strike fact declaration filed with motion to dismiss); *Sepehry-Fard v. elect Portfolio Servicing, Inc*., 2016 U.S. Dist. LEXIS 112542, *15, 2016 WL 4436312 (N.D. Cal. Aug. 23, 2016) (affidavits not appropriate for judicial notice); *Ahdom v. Lopez*, 2016 U.S. Dist. LEXIS 125202, *3 (E.D. Cal. 2016) (declarations not appropriate for judicial notice). "The general prohibition against looking at matters beyond the complaint to resolve a Rule 12(b)(6) motion ensures that parties have adequate notice to present additional evidence and establish whether there are any genuine issues of material fact to be resolved." *de Fontbrune v. Wofsy*, 2016 U.S. App. LEXIS 20416 *16 (9th Cir. Nov. 14, 2016). Additionally, declarations that are not referenced in a complaint are considered beyond the scope of the complaint and cannot be considered in furtherance of a motion to dismiss. *See Gerritsen,* 112 F. Supp. 3d at 1021 (collecting cases holding that declarations of fact cannot be considered on motions to dismiss).

## C.   Leave to Amend Is Liberally Granted, Especially When the Complaint Has Not Previously Been Amended

The Federal Rules of Civil Procedure provide that the Court should "freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). The Ninth Circuit, and the district courts within the Ninth Circuit, apply this policy favoring amendment be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "Absent prejudice, or a strong showing of any of the remaining [] factors,[2] there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." Id. at 1052 (emphasis in

---

[2] A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig*., 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted). Of these factors, the consideration of prejudice carries the greatest weight. *See Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003). Here, at the earliest stage of the case and before discovery, there can be no legitimate claim of prejudice.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1   original). "[D]ismissal without leave to amend is improper unless it is clear, upon *de novo* review,

2   that the complaint could not be saved by any amendment." *Griggs v. Pace Am. Group, Inc*., 170

3   F.3d 877, 879 (9th Cir. 1999).  "Denials of motions for leave to amend have been reversed when

4   lacking a contemporaneous specific finding by the district court of prejudice to the opposing party,

5   bad faith by the moving party, or futility of amendment." *Mendia v. Garcia*, 165 F. Supp. 3d 861,

6   873 (N.D. Cal. 2016) (*quoting DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir.

7   1987)).  The Court should even more liberally grant leave to amend a complaint that has not

8   previously been amended. *See Mendia,* at 874; *United Tactical Sys., LLC v. Real Action Paintball,*

9   *Inc.*, 2017 U.S. Dist. LEXIS 70115, *15-16 (N.D. Cal. 2017). Accordingly, UCAR should be

10  granted leave to amend, if necessary.

## III.   BACKGROUND FACTS

12          UCAR is one of the largest car-hailing services and technology platforms in China.

13  (Complaint, ¶ 14.)  Like Uber and Lyft in the United States, UCAR provides a platform in China

14  for ride-hailing to millions of people who use UCAR apps on iPhones and Android-enabled smart

15  phones or use the UCAR website.  UCAR is a technology company whose competitive advantage is

16  based on its ability to continue to innovate. (Declaration of Zhiya Qian ["Qian Dec."] [Dkt. 6-4], ¶

17  3.) Some if its most mission critical projects include its ride-hailing software and analysis of large

18  data sets related to vehicles in transit.  (*Id.*; *see also* Complaint, ¶ 14.)

19          To advance its technology, especially related to big data analysis, UCAR hired Defendants

20  as a team of research and development engineers for UCAR's Silicon Valley office. (Complaint, ¶¶

21  15-18; Qian TRO Dec. [Dkt. 6-4], ¶ 4.)  Over time, the team began to work on important

22  technological advances related to development of next-generation auto-pilot technologies.

23  (Complaint, ¶¶ 22-23; Qian TRO Dec., ¶ 4-7.)  Defendants spent approximately one-and-a-half

24  years and collectively received hundreds of thousands of dollars from UCAR to work on the

25  company's trade secret technology development. (Complaint, ¶ 1; Qian TRO Dec., ¶ 6.) What

26  UCAR did not know was that Defendants were secretly setting the stage to steal UCAR's

27  proprietary information, and the proprietary work they had done for UCAR, to set up a competing

28  venture of their own.  (Complaint, ¶ 1.)

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

In March 2017, UCAR first learned that Defendants were considering leaving the company, and then, on March 14, 2017, Defendants all abruptly resigned by email, taking UCAR's trade secrets and intellectual property, copying this information to other computers or copying data to local memory on non-UCAR computers through access to remote servers, reformatting their UCAR company computers, and for a time denying UCAR administrative level access to its AWS account. (Complaint, ¶¶ 1, 27-32, 35-43, 56-58, 64, 69.)

When confronted, Defendants admitted that their actions were the product of simple greed: they had learned that if they took UCAR's property, it could support their new company and reap economic benefits, so they did.  (Complaint, ¶ 1.)  UCAR sent Defendants cease and desist letters demanding that Defendants give back all UCAR's trade secret information.  Despite UCAR's demands, Defendants did not give back to UCAR data they took. (Complaint, ¶¶ 1, 69.)  Defendants returned no data at all until *after* they were sued in this case, and even then, they destroyed vast amounts of data instead of returning it as instructed.  UCAR still has to take discovery as to Defendants' retention of UCAR proprietary information.

UCAR filed its Complaint, along with a motion for temporary restraining order and supporting evidence. (Dkt. 1 & 6 – 6-5.)  The Court granted the TRO. (Dkt. 17.)  Subsequently, Defendants filed lengthy declarations that, as defense counsel himself characterized at the hearing regarding the Court's order to show cause why a preliminary injunction, were aimed at "coming clean." (Dkt. 31 – 31-34.)  Those declarations, while admitting to certain misdeeds, obfuscate and misrepresent others.  Based on the representations by Defendants under oath, the Court discharged the order to show cause, but in so doing agreed that the facts support several of the elements of the claims asserted in the Complaint, holding, for example, the following:

- "[T]he court acknowledges that UCAR has a legitimate interest in protecting its proprietary information from disclosure and that some of Defendants' conduct raises valid concerns in this regard." (Dkt. 41, ¶ 8.)

- "[T]here is no dispute that Defendants reformatted their laptops when they left UCAR, effectively erasing the data and records contained on the computer." (*Id.*, ¶ 7.)

- "Mr. Li admits that he deleted certain UCAR files after having downloaded them to his wife's computer…" (*Id.*.)

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

- "Mr. Li admits to having logged on to UCAR servers after formally resigning from the company, admits to having downloaded (even if inadvertently) certain UCAR files, and admits to having deleted this information after realizing what it was." (*Id.,* ¶ 8.)

- "There is also some evidence to suggest that Defendants may have retained or otherwise had in their possession (even if inadvertently) other UCAR data after having resigned from the company." (*Id.*)

- "And there is no dispute that all Defendants joined a new startup company that could become a competitor to UCAR." (*Id.*)[3]

Surprisingly, despite Defendants' purported willingness to come clean, they now attempt to skirt responsibility through a motion to dismiss the Complaint in its entirety.

## IV.   THE CLAIMS IN THE COMPLAINT ARE WELL-FOUNDED AND NOT SUBJECT TO DISMISSAL

Defendants assert disputed facts (not permitted in making a motion to dismiss) and mischaracterize the record.  In fact, UCAR has properly pled the claims set forth int he Complaint.

### A.   The Complaint Allegations and Submitted Evidence Support UCAR's California Trade Secret Claim

#### 1.   Defendants' Inevitable Disclosure Argument Is Misplaced

Defendants state, without any citation to the Complaint, that "Plaintiffs' complaint alleges trade secret misappropriate based on an impermissible 'inevitable disclosure' theory." (Mot., at 8.) This is at best a "straw man" argument, and it is simply false.  The Complaint is based on a set of factual allegations that do not require reliance on inevitable disclosure.

Indeed, the Complaint alleges not simply that the Defendants would inevitably disclose trade secrets to work at a new company, but rather that they took tangible trade secret information, including at least proprietary database data and source code to use at the new company. (*See, e.g.,* Complaint, ¶ 1, 28-31, 36-42.)  Beyond this, Defendants *admitted* that they did so.  Their team leader conceded under oath that he downloaded more than 9,000 files from UCAR's server after he

---

[3] Defendants may argue that the Court found, based on the evidence of record, that there was insufficient evidence of a likelihood of immediate, irreparable harm from improper use of UCAR proprietary information going forward.  However, that ruling—regarding a requested preliminary injunction—was based on an entirely different standard of review than for a Complaint, where all facts in the Complaint are deemed true and all inferences must be drawn in UCAR's favor. *See Manzarek,* 519 F.3d at 1031.  The Ninth Circuit has noted that that post-*Twombly,* a complaint need only present a claim for relief that is plausible, *not* probable. *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014).

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

resigned from the company, and that he realized the files contained the UCAR's proprietary

information.  The files themselves show that both types of files were present in the downloaded

material. (Li Dec. [Dkt. 31-1, ¶¶ 133-139]; Holland Dec. [Dkt. 31-23, ¶¶ 15-21 & Ex. 2].)   Li states

that he subsequently deleted the files, but there is there no proof that no other copies exist, and his

testimony is contradicted by forensic evidence.[4] Thus, not only does the Complaint sufficiently plead

trade secrets were taken, proof of this taking has already been submitted to the Court.  Therefore,

Defendants' assertion that the trade secret claim is based purely on "inevitable disclosure" is far

from the truth.

　　　　Also, the law relied upon by Defendants as holding the "inevitable disclosure" doctrine is no

longer valid in California confirmed that the CUTSA permits injunctive relief against former

employees for actual or ***threatened*** trade secret misappropriation. *See Schlage Lock Company v.

Whyte,* 101 Cal. App. 4th 1443, 1456-58 (2002)  (citing Cal. Civ. Code § 3426.2(a)). Here there is

ample pleading of facts showing threatened disclosure. (*See, e.g.,* Complaint, ¶¶ 1, 28-31, 36-37.)

"On information and belief, Defendants have disclosed, and intend to continue to disclose, UCAR

trade secrets and confidential information to others, including their new company." (Complaint, ¶

39; *see also id.,* ¶¶ 48-49.)  Defendants took UCAR's proprietary files, and when confronted by

UCAR's COO, they did not dispute that they were taking UCAR material to use at a competing

company. (Complaint, ¶ 31.) Yan Li admits this in his declaration, providing as an excuse that he did

not want to contradict the COO but did not intend to base his work on UCAR data or work.  But that

is a disputed fact that requires a jury to assess Li's credibility, and therefore cannot be used to avoid

the claims on a motion to dismiss (or indeed a summary judgment motion). *Accord Royal Oak*, 880

F.Supp.2d at 1060 (witness fact testimony cannot be used to support a motion to dismiss a

complaint); *Gerritsen,* 112 F. Supp. 3d at 1021 (collecting cases all holding that declarations of fact

cannot be considered on motions to dismiss).[5]

---

[4] *See, e.g.,* Maugeri Dec. [Dkt. 34-5, ¶¶ 14-24 (explaining how Defendants did not perform sufficient analysis to show that all copies of data were destroyed and not retained), ¶ 14 (explaining that Li's and Holland's testimony that Li only accessed UCAR data on March 14 is false and contradicted by the physical evidence)]; Huang Dec. [Dkt. 35-3 – 35-9 (showing that Li accessed UCAR servers multiple times subsequent to resigning, including after March 14)].
[5] Yan Li's credibility is highly questionable at best; it appears that he has already made multiple statements under oath that have proved to be false. His statement that he did not intend to use UCAR data is belied by the fact that after he resigned he downloaded more than

2.      **The Complaint and Submitted Evidence Supports UCAR's California Trade Secret Claim**

California trade secret law is codified by the CUTSA. *See* Cal. Civ. Code §§ 3426-3426.11. "To state a claim under the California Uniform Trade Secrets Act, a plaintiff must plead facts sufficient to show that: (1) the plaintiff owned a trade secret; (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means; and (3) the defendant's actions damaged the plaintiff." *VasoNova Inc. v. Grunwald*, 2012 U.S. Dist. LEXIS 133380, *5 (N.D. Cal. Dec. 11, 2012) (*citing CytoDyn of N.M., Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008)).   Under the California Uniform Trade Secrets Act, 'trade secret' means "information, including a... compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).  So long as UCAR pled facts supporting these legal requirements, there is no basis to dismiss the claims.

UCAR identified trade secrets in its complaint, including the following:

a.      Detailed proprietary data that UCAR collected from its network of more than 15,000 cars, which provided valuable insight into car operation and usage;

b.      The software and testing data related to auto-piloted cars developed by UCAR and the subsets of the larger data set usable for work on auto-pilot technology, as well as UCAR software developed to work with vehicle auto-pilot technology and the R&D work being done by Defendants for UCAR.  (*See* Complaint, ¶ 25.)

---

9,000 files from UCAR's database onto a personal computer.  He stated that he only accessed the UCAR database once, which has proven to be false according to Defendants' own forensic report as well as UCAR's server logs. (*Contrast* Li Dec., ¶ 140 *with* Dkt. 31-23 Ex. 2, Dkt. 34-5, ¶ 15 & Dkt. 35-3 – 35-9.) Li stated that he did not access the files on the MacBook between March 14 and 17, which was belied by the same evidence. (*Id.*) He also stated that he received a letter from UCAR's attorney on March 17 and deleted the UCAR files from the MacBook on March 17, but that was sheer coincidence and had nothing to do with each other, because in fact he suddenly came to the realization on his own that he had UCAR confidential information that he should delete, which is simply not believable. (*See* Li Dec., ¶ 139.) Also, UCAR has not yet had the opportunity to depose Defendants or take other discovery as to the various statements made in the declarations. Statements of fact made by Defendants in declarations cannot be taken at face value, especially on a motion to dismiss claims of a complaint.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

Data compilations like the car usage data, which is voluminous and proprietary, not publicly available but collected by UCAR and maintained as confidential, are classically considered to constitute trade secrets. *See CBS Interactive v. Etilize, Inc.,* 2009 Cal. Super. LEXIS 2262, *11 (L.A. County Super. Dec. 10, 2009) ("data compilations, such as those identified by Plaintiff, are subject to protection as trade secrets."). At UCAR, this data is protected and kept secret. (*See, e.g.,* Complaint, ¶¶ 1, 26, 35-36.) What is more, Defendants admitted that they understood this information to be proprietary to UCAR. (*See* Li Dec. [Dkt. 31-1], ¶ 139 [indicating that the reason he deleted more than 9,200 files he had downloaded from UCAR servers because he realized they included UCAR proprietary information].)

Additionally, research and development work, including queries on the UCAR database, software development, reporting, and other work done by the team on auto-pilot technologies, were matters maintained as confidential and trade secret by UCAR. Auto-piloting is a cutting-edge technological field, and the information developed by the R&D team was kept confidential. (*Id.,* ¶¶ 1, 14-27, 35-36; Qian TRO Dec. [Dkt. 6-4], ¶¶ 3-8; Qian PI Dec.[Dkt. 34-1], ¶¶ 3-7.) UCAR has plead facts showing that it has relevant trade secrets that the company took measures to protect as trade secrets. (*Id.*)

The other factors are easily established, because Defendants were the R&D team that had access to the UCAR database and performed the R&D work. (*Id.*) The fact they deleted all the data from their laptops, and prevented UCAR from denying them access to the AWS server for some time, is strong circumstantial evidence that they still have possession of that trade secret information. (*See, e.g.,* Complaint, ¶¶ 1, 27-32.) UCAR is being damaged because Defendants still could use that information to compete with UCAR even though they should not have it at all. (*Id.,* ¶¶ 32-33, 42-45, 49-54.)

State trade secret misappropriation clearly has been alleged in the Compliant. More than that, it is supported both by direct evidence via the tacit admission of Yan Li that the group was taking the information to use at the new company and the admission of downloading more than 9,000 files including company database and source code files. (Li Dec. [Dkt. 31-1, ¶¶ 133-139]; Holland Dec. [Dkt. 31-23, ¶¶ 15-21 & Ex. 2].) It also is supported by forensic evidence. (*Id.*) It is

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1   further supported by circumstantial evidence, including that all Defendants destroyed all data from

2   their laptops in a way that made the history of file transfer from those computers untraceable, the

3   fact that they left the R&D in a state of disarray, that they took the administrative rights with them

4   and did not provide UCAR with that information, and several other damning facts showing

5   misappropriation of UCAR data and destruction of its property.  (*Id.;* Complaint, ¶¶ 1, 27-32, 77;

6   Maugeri Dec. [Dkt. 34-5], ¶¶ 14-24; Qian PI Dec. [Dkt. 34-1] ¶¶ 3-7.)

7        **B.**     **The Complaint Allegations and Submitted Evidence Support Federal Trade
                    Secret Claim**

8

9           Defendants' motion discusses state law trade secrets, but those have different requirements

10  from UCAR's *federal* trade secrets claim. The federal Defend Trade Secrets Act (DTSA) provides a

11  right to a civil action for relief for misappropriation of trade secrets: "An owner of a trade secret that

12  is misappropriated may bring a civil action under this subsection if the trade secret is related to a

13  product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. §

14  1836(b)(1).  The federal law has its own requirements and does not have to meet CUTSA

15  requirements.  *Accord DTS Brand Energy & Infrastructure Servs. v. Irex Contr. Grp.,* 2017 U.S.

16  Dist. LEXIS 43497 *9 (E.D. Pa. Mar. 23, 2017) (noting that there are differences between DTSA

17  and the Uniform Trade Secrets Act used as the model by states).

18          Defendants' ***only*** assertion regarding the DTSA is that a claim under the statute cannot be

19  based "merely on the information the person knows," citing 18 U.S.C. § 1836(b)(3)(A)(i)-(ii).

20  However, the Compliant does not allege merely that the Defendants know of information.  It alleges

21  that the Defendants took proprietary trade secret database information obtained at great cost and

22  effort by UCAR, and that they took UCAR proprietary source code and R&D information that

23  Defendants developed specifically for UCAR.  That is far more than "information the person

24  knows."  Beyond this, unlike CUTSA, the DTSA does not have specific requirements for pleading

25  and proving trade secret misappropriation other than the fact Defendants misappropriated a trade

26  secret.  The same facts discussed above regarding the CUTSA claim more easily clear the bar for the

27  federal DTSA claim. (*See, supra,* Sec. IV(A)(1)-(2).)

28

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

C.     **The Complaint Properly Pleads a Claim for Conversion**

UCAR has asserted a claim for property conversion that is causing it ongoing damage. "To establish a conversion, plaintiff must establish an actual interference with his ownership or right of possession. . . . Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion." *Moore v. Regents of the Univ. of Cal.*, 51 Cal.3d 120, 136 (Cal. 1990) (internal citations omitted). "[A]ny act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion." *Plummer v. Day/Eisenberg, LLP,* 184 Cal.App.4th 38, 50 (Cal. 2010). A cause of action for conversion can be based on either the taking of property or its intentional destruction or alteration. 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 710, 711, pp. 1034-1035 (Witkin Summary); *Fearon v. Department of Corrections,* 162 Cal.App.3d 1254, 1257 (1984); *Division of Labor Law Enforcement v. Siskiyou Mills*, 229 Cal. App. 2d 105, 110 (1964). "Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066 (Cal. App. 1998) (internal citations omitted).

Defendants assert two arguments against UCAR's claim for conversion, neither of which is well-founded. First, Defendants assert that the claim is preempted by the state trade secret theft claim. In so doing, Defendants again mischaracterize the law. Again, instead of analyzing the actual allegations of the Complaint, they respond to their own "straw man" argument. As held by all the cases cited by Defendants, a state law conversion claim may be preempted by a CUTSA claim, but *only* to the extent the two claims arise from the same facts. *See Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.,* 2017 WL 412524, *8 (N.D. Cal. Jan. 31, 2017) (if the only property identified in the complaint is confidential or proprietary information … then a conversion claim *predicated on the theft of that property* is preempted." (emphasis added)). Thus, if the only conversion or interference with property is the allegation that Defendants misappropriated trade secrets, that allegation cannot serve as the basis for a conversion claim. "However, state law claims

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

that rely on additional and different facts or theories of liability than those forming the basis for the trade secret claim are not preempted by the [C]UTSA. *See E-Smart Techs., Inc. v. Drizin*, 2009 U.S. Dist. LEXIS 272 at *19-20 (N.D. Cal. Jan. 5, 2009) ("To the extent that the unfair competition and conversion claims rely upon allegations of something other than misappropriation of trade secrets, those claims cannot be preempted by the UTSA.")." *Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commun., Inc.*, 2011 U.S. Dist. LEXIS 122420 *25-26, 2011 WL 5025178 (S.D. Cal. Oct. 21, 2011).  Preemption is not triggered where the facts underlying an independent claim are "similar to, but distinct from, those underlying the misappropriation claim." *Axis Imex, Inc., v. Sunset Bay Rattan, Inc.*, No. C 08-3931, 2009 U.S. Dist. LEXIS 2667, 2009 WL 55178, at *5 (N.D. Cal. January 7, 2009).[6]

Here, the Complaint makes several allegations that do not and cannot serve as the basis for trade secret theft, but establish well the elements of conversion.  For example, Defendants destroyed all the information on the company laptops. (Complaint, ¶ 1, 30, 77.)  That cannot be misappropriation, since it is the opposite of appropriating—it is destroying.  Instead, the act meets the criteria for "interference with" UCAR's ownership rights, supporting liability for conversion. *See Moore,* 51 Cal.3d at 136.  Similarly, taking the administrative access rights when they left the company and not providing UCAR with the information needed to gain administrative access does not itself constitute trade secret theft; instead, it constitutes interference with UCAR's ownership rights.[7]  (Complaint, ¶¶ 1, 27-32, 77.)  Moreover, after the Complaint was filed, Defendants

---

[6] "Moreover, Defendants' motion to dismiss based on preemption cannot be addressed until it is determined whether the allegedly misappropriated information constitutes a trade secret." *Amron,* at *27. "[C]ourts have held that the [*28] question of preemption cannot be addressed prior to determining whether the allegedly misappropriated information constitutes a trade secret." *Id., at *28, citing Genzyme Corp. v. Bishop,* 463 F. Supp. 2d 946, 949 (W.D. Wis. 2006); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,* 295 F. Supp. 2d 430, 437 (D. De. 2003); *Stone Castle Fin. v. Friedman, Billings, Ramsey & Co.,* 191 F. Supp. 2d 652, 658-659 (E.D. Va. 2002); *Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.,* 985 F. Supp. 827, 830 (N.D. Ill. 1997).

[7] These facts show intentionality and provide circumstantial evidence of trade secret misappropriation, but that is entirely different than constituting trade secret misappropriation. The CUTSA claim is not based on destruction of UCAR property even though destruction of property also is circumstantial evidence showing an intent of Defendants to cover their tracks and avoid proof of trade secret theft.  The key is that the claims must be based on the same nucleus of facts.  Here they are not, because destruction of property does not give rise to a trade secret misappropriation claim. By way of analogy, if someone steals a painting from a homeowners' house and then burns the house down to cover their tracks, the burning is not a theft even though there exists an overlap of facts for evidentiary purposes.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1   conceded in their filed declarations to this Court that they took various physical items from UCAR,

2   including USB drives, telephones, security access badges, and other items.  (*See* Dkt. 31-1, 31-12,

3   31-15, 31-19.)  These further support UCAR's conversion claim.  For the same reasons, the unfair

4   competition claim also is not preempted.[8]

5           Second, Defendants assert that conversion cannot apply to intangible property.  This

6   argument is based on the same flaw, namely Defendants' mischaracterization of UCAR's claims as

7   being solely predicated on trade secret misappropriation, when they are not.  The cases hold that

8   conversion cannot apply to "intangible intellectual property."  *See, e.g., Innospan Corp. v. Intuit,*

9   *Inc.,* 2011 U.S. Dist. LEXIS 29122, *8 (Mar. 8, 2011).  Intellectual property includes trademarks,

10  patent rights, and trade secrets (intangible abstractions), but not the destruction of or denial of access

11  to actual computer files, which are physical.  *See Thrifty-Tel, Inc. v. Bezenek,* 46 Cal. App. 4th 1559

12  (1996) (computer files stored on a disk are tangible property that support a claim in California for

13  conversion); *see also, e.g., Angelica Textile Services, Inc. v. Park,* 220 Cal. App. 4th 495, 508 (2013)

14  (allegation of taking files constitutes tangible property and supports conversion claim); *Loop AI Labs*

15  *Inc v. Gatti,* 2015 U.S. Dist. LEXIS 117330, *10 (N.D. Cal. Sept. 2, 2015) (theft of computer and

16  computer files differs from trade secret misappropriation and supports conversion claim);  *Keystone*

17  *Fruit Mktg. v. Brownfield*, 2007 U.S. Dist. LEXIS 22018, *6-7 (E.D. Wash. Mar. 14, 2007) (granting

18  motion to amend to add conversion claim based on taking of "computer data and files").

19          Here, Defendants destroyed all the data on their UCAR laptops when they left.  Each of the

20  Defendants was an employee of UCAR, and the data on those laptops was UCAR property.

21  (Complaint, ¶ 1, 30, 77.)  "Everything which an employee acquires by virtue of his employment,

22  except the compensation which is due to him from his employer, belongs to the employer, whether

23  acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."

24  Cal. Labor Code, § 2860.  The protected data on the AWS servers, including the work product

25  created by Defendants while employed at UCAR, is similarly UCAR property.  Yet, for some time,

26  Defendants prevented UCAR access to that data, thereby directly interfering with it.  And to the

27  _____

28  [8] Defendants' reliance on *Silvaco Data Systems v. Intel Corp*., 184 Cal. App. 4th 210 (2010) in
    this respect is particularly misplaced.  In *Silvaco,* the Court held that the UCL claim was **not**
    superseded by the CUTSA claim because, although the facts overlapped, the facts used for
    each theory of liability differed. *See id.,* at 241-42.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

extent Defendants retain their own copies of UCAR information on other media (which is pled in the Complaint and is the subject of discovery), that also constitutes conversion. Therefore, the conversion claim is well-pled and not subject to dismissal.

### D. The Complaint Properly Pleads a Claim Under the Computer Fraud and Abuse Act

UCAR has alleged two fraud-related claims under federal and state law.  To prove a violation of the federal Computer Fraud and Abuse Act, which is codified at 18 U.S.C. § 1030.  A person violates this law by "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." *Id*. § 1030(a)(4). "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." *Id*. § 1030(g).  Here, there are multiple reasons Defendants are liable for federal law violations.  They destroyed the information on their UCAR laptop computers without authorization to do so, thereby depriving the company of that information. (Complaint, ¶ 1, 30, 77.) They denied UCAR administrative access to the AWS server. (*Id.,* ¶¶ 23, 64, 92.)  They took UCAR's trade secrets and proprietary information with them, and when confronted with the accusation that they were going to use it at the new company, they did not dispute the fact.  (*Id.,* 31.)  They had the only administrative rights to the protected database, which may allow them continued access without authorization. (*Id.,* ¶¶ 1, 23, 64, 92.)  Each of these constitutes an actionable violation of the Computer Fraud and Abuse Act.

Defendants admitted that they accessed UCAR computers and took data after they resigned and therefore had no authority to continue to access data from UCAR.  *See* 18 U.S.C. § 1030.  Defendants' citation to *United States v. Nosal*, 844 F.3d 1038 (9th Cir. 2016) does not help their cause.  There the Court held that accessing a former employer's computer after leaving was a violation of the Computer Fraud and Abuse Act (CFAA), upholding a criminal conviction of the defendant who engaged in the unauthorized access. *Id.,* at 1029; *see also LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (former employee's log-in to company computer to download files was a violation of CFAA).

Defendants respond by disputing the allegations of the Complaint and arguing the facts,

which they may not do on a motion to dismiss. *See Ritchie*, 342 F.3d at 908-09 (cannot rely on facts about events in declarations to dismiss a complaint).  All pleadings must be accepted as true, and all inferences must be made in the plaintiff's favor.  *Manzarek,* 519 F.3d at 1031.

Yan Li has admitted under oath that after he terminated his employment, he accessed the servers and downloaded files, including UCAR confidential information. (Li Dec. [Dkt. 31-1, ¶¶ 133-139]; Holland Dec. [Dkt. 31-23, ¶¶ 15-21 & Ex. 2].)  The files themselves, according to Defendants' own forensic report, show both UCAR proprietary database files and source code. (*Id.*)  Then, although Li denies it, the same forensic report shows that he downloaded more files the following day, at a time even he admits he was not authorized to do so. (*Id.*)  UCAR's own review of its files shows that he accessed another server on at least a third occasion. (Dkt. 31-23 Ex. 2, Dkt. 34-5, ¶ 15 & Dkt. 35-3 – 35-9.)  None of this was authorized, and Defendants do not pretend that it was.  Under *Nosal,* this activity is actionable under the CFAA.[9]  These facts were determined after the filing of the Complaint, but are fairly noticed by the allegations in the Compliant in support of this claim.  (*See, e.g.,* Complaint, ¶¶ 1, 27-32, 56-60.)

Instead of taking issue with the evidence, Defendants take issue with the allegations of the Complaint, asserting that they are not worded as strongly as the subsequent evidence produced by both sides has showed.  First, the allegations are broad enough to encompass the behavior.  Second, complaints are based on notice pleading.  The Court may take into consideration the subsequent evidence in the case as providing further support for more general allegations. *Accord ESG Capital Partners, LP v. Stratos,* 828 F.3d 1023, 1032 (9th Cir. 2016) (other than fraud, pleadings must only meet "minimal notice pleading requirements").

---

[9] In this way the facts are dissimilar to *Ewiz Express Corp. v. Ma Labs, Inc.,* 2015 WL 5680904, *7 (N.D. Cal. Sept. 28, 2015).  Unlike that case, here not only does the Complaint allege unauthorized access, but the Court has received actual evidence of computer logs and forensic reports regarding Defendants' computer that proves at least three times after they terminated their employment that Defendants accessed UCAR servers, and shows that they acquired more than 9,000 files doing so (and even shows which files).  *Ewiz* is inapposite. Defendants attempt to avoid liability by asserting that Defendants were paid through March 15, 2017, but they admit that they resigned on the morning of March 14 after which they no longer worked for UCAR.  Moreover, their own forensic report shows download activity on March 16.  Additionally, they are again arguing the facts, which is inappropriate on a motion to dismiss.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

**E.     The Complaint Properly Pleads a Claim for State Common Law Fraud**

Additionally, state law fraud applies here.  Proof of fraud has four elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e*., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp*., (2007) 157 Cal.App.4th 835, 845 (2007); *Engalla v. Permanente Medical Group, Inc*.,15 Cal.4th 951, 974 (1997).  Here, Defendants started courting investment while they were still working at UCAR. Before they left, they told UCAR's COO that they were obtaining at least $10 million in investment to leave UCAR and start a competing venture. They made preparations to leave and take UCAR's trade secret and proprietary information, including their own work product, with them.  They concealed this information from UCAR and continued to represent that they were working for UCAR when they had really begun working for their own competing venture, which is further evinced by the fact that they left and destroyed the data on their laptops on the way out. (Complaint, ¶ 1, 30, 77, 84-90.)  UCAR would not have continued to pay the Defendants and provide them ongoing access to its trade secret and proprietary data if Defendants had told the truth. (*Id., ¶* 88.) These facts are all pled in the complaint.

In response, Defendants assert that the claim is not specific enough under Federal Rule of Civil Procedure 9(b).  But the facts pled are specific.  The employment contract was at-will, meaning it was renewed paycheck to paycheck. (Complaint, ¶¶ 15-19; Zhang TRO Dec. [6-3], Exs. 1-4.)  By continuing to take UCAR's money, each Defendant maintained and renewed his or her initial promise to UCAR. By maintaining this affirmative representation when it was no longer true, and by concealing and failing to disclose that they no longer had any intention of providing UCAR with value for that money, knowing that UCAR was only paying them because they had represented that they were going to provide value to UCAR, each Defendant committed fraud under California state law. (Complaint, ¶¶ 84-88.) As each Defendant is alleged to owe a fiduciary duty (Complaint, ¶¶ 22, 92), that duty also includes the duty not to conceal or fail to disclose material information, and the failure to do so further supports a California common law fraud claim. *See OCM,* at 845; *Lingsch v. Savage*, 213 Cal. App. 2d 729, 735 (1963). No more is required to be pled.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

**F.**     **The Complaint Properly Pleads a Claim for Breach of Fiduciary Duty**

Defendants properly recite the elements of a claim for fiduciary duty but then again improperly attempt to dispute the facts.  In California, a claim for breach of fiduciary duty has three elements: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.  *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995).  Facts are alleged in the Complaint and attested to in declarations supporting each of the elements.

Defendants were entrusted with a high degree of autonomy and responsibility.  (Complaint, ¶¶ 22; Qian TRO Dec. [Dkt. 6-4], ¶ 4.) They each signed an agreement that included a duty of loyalty.  (Complaint, ¶¶ 15-19; Zhang TRO Dec. [6-3], Exs. 1-4.)  UCAR depended on Defendants' loyalty and not to abuse their positions. Yan Li admitted that he signed papers setting out his responsibilities as the only director of UCAR Technology (USA), Inc. (Li Dec. [Dkt. 31-1], ¶¶ 31-39 & Ex. G.)  He makes the excuse that he did not fully understand the legal importance of the papers, but, per his own declaration, he was not coerced.  He voluntarily undertook special fiduciary duties. *Accord Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327, 345 (Cal. 1966) (corporate director owes a fiduciary duty to the company).  But then Yan Li admits he destroyed company information and downloaded 9,200 additional files for use in a competing venture.  The other Defendants admit they also took company confidential information to use at a competing venture despite the responsibility and duty of loyalty they undertook. Clearly, UCAR has met its pleading burden for this claim. *Accord Graham-Sult v. Clainos*, 738 F.3d 1131, 1143 (9th Cir. 2013) (breach of fiduciary duty occurs under California law when defendant has duty and breaches it to the detriment of the plaintiff). Defendants "were trusted agents who had fiduciary duties to Plaintiffs …. Defendants breached that [fiduciary] duty by misappropriating Plaintiffs' trade secrets." *PQ Labs, Inc. v. Yang Qi*, 2014 U.S. Dist. LEXIS 139342, *27 (N.D. Cal. Aug. 23, 2013).

Defendants argue that there is not showing of fiduciary duty, but that is belied by the allegations and subsequent submitted testimony.  Defendants state that mere employment relationship does not give rise to fiduciary duty, but the Complaint pleads far more.  It pleads that each Defendant was part of a discrete and autonomous R&D group, that they specifically contracted to give the employer a duty of loyalty, and that they had broad authority and control over their work

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1   and were entrusted with a high degree of autonomy by UCAR, who relied on their fiduciary roles

2   instead of providing detailed oversight. (Complaint, ¶¶ 1, 15-27, 92.) Similarly, Defendants citation

3   to *MH Pillars Ltd. v. Realini*, 2017 U.S. Dist. LEXIS 33450 (N.D. Cal. Mar. 8, 2017) is inapposite.

4   In that case, there was literally one paragraph that simply stated that officers and controlling

5   shareholders owe fiduciary duties without providing any grounds for how the defendants were

6   entrusted as fiduciaries.  Here, the Complaint (and subsequently provided declarations) show how

7   Defendants were entrusted as fiduciaries and how they voluntarily undertook those duties.

8   (Complaint, ¶¶ 1, 15-27, 92; Qian TRO Dec. [Dkt. 6-4], ¶¶ 3-8 Qian PI Dec. [Dkt. 34-1], ¶¶ 3-7.)

9   Defendants' own declarations, replete with statements about how they were left to conduct their

10   own research, is further support. And Yan Li was not simply an officer, he was the ***sole director*** of

11   the company.  (Complaint, ¶ 22.)  The fact that he was left to run his own team shows that his role

12   was not simply nominal.[10]

13   ### G.       The Complaint Properly Pleads a Claim for Breach of Contract

14   Defendants all had signed employment agreements with contractual provisions that they

15   would not work for the benefit of others.  (Complaint, ¶¶ 1, 15-18; Ex. 1-4 to Dkt. 6-3.)  Each

16   agreement also included a duty of loyalty.  *Id.*  Defendants further ignore that, by the very nature of

17   their employment as researchers for a dedicated R&D unit, they were creating trade secret work

18   product. (Complaint, ¶¶ 1, 15-27, 92; Qian TRO Dec. [Dkt. 6-4], ¶¶ 3-8 Qian PI Dec. [Dkt. 34-1], ¶¶

19   3-7.)  This is not just about "non-trade secret skills" acquired at UCAR.

20   Additionally, Defendants' general statement that they did not do any work to help the startup

21   prior to leaving UCAR is belied by the fact that prior to their departure (and allegedly before they

22   were offered employment by Xu Han), they indicated they had $10 million of financing for the

23   venture. (Complaint, ¶ 31; Qian TRO Dec. [Dkt. 6-4], ¶¶ 9-10.)  Yan Li also testified that he had

24   communications about joining the startup competitor in February and March 2017 before resigning

25   from UCAR. (Li Dec., ¶¶ 86-87.) The only reason UCAR's COO flew to the United States was

26   because on March 12, Yan Li's team had announced their intention to leave to go to such a startup

---

27   [10] Defendants go so far as to argue that Yan Li could not be a fiduciary because he did not

28   authorize the lawsuit to be filed against himself.  Obviously, that is not a requirement for
    pleading fiduciary duty, and the case cited by Defendants (*Zoumboulakis v. McGinn*, 148 F.
    Supp. 3d 920, 925 (N.D. Cal. 2015)) says no such thing.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1   (Qian TRO Dec. [6-4], ¶ 9), which shows a complete lack of credibility to Xu Han's statement that

2   he did not offer Defendants employment until March 13. Knowing that he was leaving UCAR for a

3   competitor, Yan Li and the other Defendants downloaded and took UCAR files to use.  When

4   UCAR's attorney demanded that Defendants return the property to UCAR, Yan Li instead attempted

5   to cover up his misdeed by destroying the evidence.  None of the Defendants returned any property

6   to UCAR until after the complaint was filed, the TRO issued, and they responded to the OSC.

7   (Harkins PI Dec. [Dkt. 34-4], Ex. 1.)  There are still multiple storage media that have not been

8   returned.  (Holland Dec. [Dkt. 31-23], ¶ 12.)

9           By leaving UCAR in a state of disarray without the stored data on the laptops and without

10  any information showing the state of the work they had been performing as an autonomous R&D

11  team, Defendants also frustrated the purpose of their employment contracts.  (Complaint, ¶ 1, 30, 64,

12  69, 77; Qian PI Dec. [Dkt. 34-1], ¶¶4, 6.)  This is a further breach of contract, as well as breach of

13  the covenant of good faith and fair dealing. *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1,

14  36 (Cal. 1995) (covenant exists to prevent one contracting party from unfairly frustrating the other

15  party's benefits of the agreement).

16          Defendants only argument as to the breach of contract claim is that they have asserted a

17  defense and counterclaim against UCAR for breaching the contract.  A defense for which

18  Defendants carry the burden of proof is by its very nature based on facts beyond the Complaint and

19  therefore cannot be used to dismiss UCAR's claim for breach of contract.  The Complaint

20  specifically pleads that UCAR met all its obligations under the contracts (Complaint, ¶ 63).  Again,

21  Defendants inappropriately base their motion on disputed facts they know cannot support a motion

22  to dismiss.  Additionally, Defendants mislead the Court in asserting the contracts were breached

23  regarding stock options.  The contracts provide salary as a matter of right, but clearly state that any

24  stock options are "[s]ubject to the approval of the Company's Board of Directors" and therefore not

25  guaranteed in the contracts.[11]  Defendants' argument to dismiss this claim is made in bad faith.

---

26  [11] Defendants admit this in their motion at page 19 n. 23.  However, they then make the
    unsupported argument that Yan Li could have approved his own stock options.  But in the
27  counterclaims filed simultaneously with the motion to dismiss, Defendants assert that the stock
    options were not to be for the company Yan Li was director of, but instead of a UCAR entity
28  that was publicly traded, which UCAR (USA) Technology Inc. was not.  Defendants contradict
    themselves in their pleadings.

### H.   The Complaint Properly Pleads a Claim for Breach of the Covenant of Good Faith and Fair Dealing

Here, there is no dispute that Defendants were each employed by UCAR until they abruptly resigned. (*See, e.g.*, Complaint, ¶¶ 1, 30-31.) Their employment agreements included a duty of loyalty and an agreement not to do outside work or work for the benefit of others. (*Id.*, ¶¶ 15-19, 67.)  But they performed work on the auto-pilot project for the benefit of their own new venture to compete with UCAR. (*Id.*, 27-28, 30-32, 64, 67-70.)  They did this with confidential data and work product they gained from or created for UCAR, and this was a clear violation of their employment agreement. (*Id.*)

Additionally, the covenant of good faith and fair dealing, implied by law, exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement made. *See Waller*, 11 Cal. 4th at 36.  Every employment agreement also includes the provision that everything acquired by the employee except compensation belongs to the employer. Cal. Labor Code, § 2860.  UCAR would be fundamentally deprived of the very basis of the employment agreement if Defendants could conduct R&D work only to take it with them and deprive UCAR of it.  The facts as pled properly support this claim.

Defendants' motion is based on the notion that in California, the tort of breach of the covenant of good faith and fair dealing arises in the context of a "special relationship" with "fiduciary characteristics." *See, e.g., Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002).  Here, UCAR has pled exactly that—Defendants undertook special relationships with UCAR as an autonomous R&D team that had fiduciary characteristics and were, in fact, fiduciary relationships. (Complaint, ¶¶ 1, 22, 92.)  There is no basis to dismiss this claim.

Defendants also assert that the Complaint fails to identify the provisions that were frustrated, but that is not true.  The Complaint specifically sets out that the contracts were frustrated in their provisions including the "outside activities" provision that each Defendant would not "engage in any other employment, consulting or other business activity" and would not "assist any person or entity in competing with the Company," as well as the agreement to exhibit loyalty to the company and maintain standards of professionalism, honesty, and reliability. (Complaint, ¶¶ 1, 22, 92.)  It was also made clear by UCAR to each Defendant that those duties encompassed a duty to

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1   maintain company R&D as confidential and proprietary.   Thus, the Complaint properly pleads a

2   breach of this covenant.

### I.   The Complaint Properly Pleads a Claim for Unfair Competition

4          Under California's Unfair Competition Law, "[a]ny person who engages, has engaged, or

5   proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."

6   Cal. Bus. & Prof. Code § 17203. The word "unfair" in Section 17200 reaches any conduct that

7   significantly threatens or harms competition, even conduct not specifically prohibited by some

8   other law. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187

9   (1999). "Unfair competition" is defined, in part, as "any unlawful, unfair or fraudulent business act

10  or practice." Cal. Bus. & Prof. Code § 17200. "Unlawful" practices are those prohibited by law,

11  whether civil or criminal; "unfair" practices are those whereby harm to the victim outweighs its

12  benefits; and "fraudulent" practices only require that the public is deemed likely to be deceived. *See*

13  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994).

14         Defendants' use of UCAR proprietary data, their theft of the work product created by

15  Defendants while employed at UCAR, and their work on any non-UCAR auto-pilot project based

16  on UCAR proprietary information, clearly violate each of the three separate prongs for finding a

17  violation of California's Unfair Competition Law. Moreover, as pled in the Complaint, Defendants

18  deceived UCAR by continuing to "work" for UCAR and collect salary while secretly obtaining

19  outside funding commitments and planning to leave and take UCAR property to start a competing

20  venture.  (Complaint, ¶¶ 1, 27-30, 84-87.)

21         As with the conversion claim, Defendants assert that this claim is preempted by CUTSA.

22  However, the unfair competition claim is not preempted, because UCAR has a right to such claims

23  based on claims other than state trade secret law.  *See, e.g., PQ Labs, Inc. v. Yang Qi*, 2014 U.S.

24  Dist. LEXIS 139342, *29-*31 (N.D. Cal. Aug. 23, 2013) (in trade secret case, unfair competition

25  claim properly based on other asserted claims).  The UCL claim can be based on facts outside the

26  CUTSA claim, including the claims for conversion, breach of fiduciary duty, breach of the

27  covenant of good faith and fair dealing, fraud, violation of the CFAA, or violation of the DTSA.

28

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V. WERE THE COURT TO FIND ANY CLAIM INSUFFICIENTLY PLED, IT SHOULD GRANT LEAVE TO AMEND

The Federal Rules of Civil Procedure provide that the Court should "freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). The Ninth Circuit, and the district courts within the Ninth Circuit, apply this policy favoring amendment be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990). Accordingly, UCAR should be granted leave to amend, if necessary. While it is unclear what the particular deficiency in pleading might be, under each claim above, UCAR has provided facts beyond the allegations in the Complaint that further support those claims. Additionally, since the filing of the Complaint, the parties have submitted more detailed statements of fact and admissions by Defendants that would further support the claims asserted in the Complaint. As such, amendment would not be futile, and leave to amend should be granted, were the Court to grant Defendants' motion as to any of the claims. *See Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996) (where motion to dismiss granted, court should grant leave to amend unless clear that deficiencies in complaint cannot be cured by any amendment).

## VI. CONCLUSION

In the Complaint, UCAR has properly pled facts that support its asserted claims. For the above reasons, UCAR respectfully requests that the Court deny Defendants' motion in its entirety.

Dated: May 25, 2017                    RUYAKCHERIAN LLP

                                       */s/ Robert Harkins*
                                       Robert Harkins

                                       Attorneys for Plaintiffs UCAR TECHNOLOGY
                                       (USA) INC., and UCAR INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 25th day of May, 2017, with a copy of this document via the Court's EM/ECF system.  Any other counsel of record will be served by electronic mail, facsimile and/or first class mail on the same date.

*/s/ Robert Harkins*
Robert Harkins

RuyakCherian LLP
1936 University Ave, Ste 350
Berkeley, CA  94704
Telephone: (510) 944-0190
bobh@ruyakcherian.com