United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UCAR TECHNOLOGY (USA) INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>YAN LI, et al.,<br><br>Defendants. | Case No. 5:17-cv-01704-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS**<br><br>Re: Dkt. Nos. 47, 54 |

I. INTRODUCTION

Plaintiffs UCAR Technology (USA) Inc., a California corporation with a place of business in California, and UCAR Inc., a Chinese corporation with a place of business in Beijing (collectively "UCAR"), bring this suit against former employees Yan Li ("Li"), Hua Zhong ("Zhong"), Da Huo ("Huo") and Zhenzhen Kou ("Kou"), residents of California (collectively "Defendants-Counterclaimants"), for allegedly taking UCAR's trade secrets and intellectual property after they resigned from UCAR. Federal subject matter jurisdiction is predicated on UCAR's claims for violation of the Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq*, and violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030. In their answer, Defendants-Counterclaimants deny that federal subject matter exists, arguing that UCAR has failed to state any viable federal claim. Defendants-Counterclaimants also assert several counterclaims, most of which are predicated upon UCAR's allegedly unlawful refusal to pay Defendants-Counterclaimants employment compensation in the form of stock options or stock.

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

1

Defendants-Counterclaimants now move to dismiss UCAR's claims and UCAR moves to dismiss the counterclaims. The Court finds it appropriate to take the motions to dismiss under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, Defendants-Counterclaimants' motion to dismiss the Complaint is granted in part and denied in part, and UCAR's motion to dismiss the counterclaims is granted.

## II.  BACKGROUND[1]

### A.  UCAR's Complaint

UCAR, one of the largest chauffeured car services providers in China, offers a platform for ride-hailing to millions of people who use UCAR apps on iPhones and Android-enabled smart phones or use the UCAR website. To advance its technology, especially related to big data analysis, UCAR allegedly set up a U.S. subsidiary and hired Defendants-Counterclaimants as a team of research and development engineers. Complaint, ¶1.[2] Over time, the subsidiary began working on technological advances related to auto development of next-generation autopilot technologies. Id. Defendants-Counterclaimants spent approximately one-and-a-half years and collectively received hundreds of thousands of dollars from UCAR to work on the company's trade secret technology. Id. UCAR also gave Defendants-Counterclaimants access to its proprietary data. Id. During that time, Defendants-Counterclaimants transitioned into a new technological field of data analysis and software related to driverless vehicles. Id. UCAR alleges on information and belief that Defendants-Counterclaimants were secretly setting the stage to steal UCAR's proprietary information and all the work they had done for UCAR in order to set up a competing venture of their own. Id.

---

[1] The Background is a summary of the allegations in the complaint and counterclaim. All well pleaded facts are taken as true for purposes of the instant motions to dismiss.
[2] The employment agreements identify the employer as UCAR Technology Inc. Neither UCAR Technology (USA) Inc. nor UCAR Inc. are referenced in the employment agreements. Defendants-Counterclaimants do not concede that they actually contracted with UCAR, but do acknowledge that they contracted with a UCAR entity of some form. To the extent that UCAR alleges it is a party to the employment agreements, Defendants-Counterclaimants seek to hold UCAR liable for, *inter alia*, breach of the employment agreements and fraud.

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

2

In March 2017, UCAR first learned that Defendants-Counterclaimants were considering leaving the company. Id. On March 14, 2017, Defendants-Counterclaimants resigned by email. Id. UCAR alleges on information and belief that Defendants-Counterclaimants took UCAR's trade secrets and intellectual property, copying information to other computers or copying data to local memory on non-UCAR computers through access to remote servers and reformatting of the UCAR company computers. Id. UCAR alleges that "[w]hen confronted, Defendants[-Counterclaimants] effectively admitted that their actions were the product of simple greed: they had learned that if they took UCAR's property, they could obtain tens of millions of dollars of investment, so they did." Id.

UCAR asserts claims for (1) violation of the Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq*, (2) trade secret misappropriation in violation of California's Uniform Trade Secrets Act (CUTSA), California Civil Code §3426 *et seq*., (3) violation of the Computer Fraud and Abuse Act, codified as 18 U.S.C. §1030, (4) breach of employment agreements, (5) breach of the covenant of good faith and fair dealing, (6) unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code §§17200 *et seq*., (7) property theft/conversion, (8) fraud/deceit and (9) breach of fiduciary duty.

B. Counterclaims

All of the Defendants-Counterclaimants assert counterclaims arising out of their employment with UCAR Technology (USA), Inc. They accepted jobs with UCAR Technology (USA), Inc. based on promises of stock options or common stock and a shared belief that they would be joining the Silicon Valley outpost of a tech company that specialized in ride hailing technology. Counterclaims, ¶1. Defendants-Counterclaimants learned UCAR was part of a poorly defined mass of corporate entities which did not respect corporate formalities or job titles and was controlled by a small group of Beijing-based employees. Id., ¶2. Within a year and a half, UCAR openly refused to pay the stock options and stock that they promised and revealed that they had no intention of building up the Santa Clara engineering team, but instead intended to use

Defendants-Counterclaimants as a fundraising tool for the benefit of other UCAR corporate entities. Id. When Defendants-Counterclaimants attempted to leave UCAR, UCAR's representative threatened to "make an example" out of them through litigation. Id., ¶4.

Counterclaimants assert claims for (1) breach of contract, (2) anticipatory breach of contract, (3) promissory estoppel, (4) unjust enrichment, and (5) fraudulent inducement to enter into an employment agreement.

## III. STANDARDS

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556–57, 127 S.Ct. 1955. A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

Also, the court usually does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

4

(9th Cir. 1989). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688–69 (9th Cir. 2001).

## IV. DISCUSSION

A. Defendants-Counterclaimants' Joint Motion to Dismiss

Defendants-Counterclaimants move to dismiss all of UCAR's nine causes of action on numerous grounds, and specifically seek dismissal of the unfair competition, conversion and Computer Fraud and Abuse Act claims with prejudice. In support of the motion, Defendants-Counterclaimants requests judicial notice of nine documents and works pursuant to Federal Rule of Evidence 201. The request for judicial notice is granted as unopposed as to item no.2 (employment contracts), no.6 (patent), no.7 (the dates of publication for articles written by Li), no.8 (the date of publication for an article written by Zhong), and no.9 (date of publication for articles written by Zhenzhen Kou) and denied as to the remaining documents and works, namely item no.1 (declaration of Yihui Zhang), nos.3 and 4 (declarations of Zhiya Qian) and no.5 (declaration of Qiangyuan Huang). The declarations are beyond the scope of the complaint and not the proper subject of judicial notice. See City of Royal Oak Retirement System v. Juniper Networks, Inc., 880 F.Supp.2d 1045, 1060 (N.D. Cal. 2012).

<u>Claim 1: Violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 *et seq*</u>

Defendants-Counterclaimants contend that the DTSA claim (and state law trade secret misappropriation claim) are based on an impermissible "inevitable disclosure" theory and that the remaining allegations are too vague or speculative to support a claim for misappropriation. UCAR counters that its claim does not depend on the "inevitable disclosure" theory, and instead is based on allegations that Defendants-Counterclaimants misappropriated trade secret information, including at least proprietary database data and source code to use at a new company they were forming.
Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

Defendants-Counterclaimants' argument has merit with respect to certain allegations in the Complaint, which includes allegations that suggest reliance on the "inevitable disclosure" theory. For example, UCAR alleges that Defendants-Counterclaimants "cannot separate out UCAR's trade secrets and confidential information in starting a competing company in the exact technology space that they worked in for UCAR." Complaint, ¶¶36, 48. To the extent the complaint relies on these types of "inevitable disclosure" allegations, those allegations are ordered stricken from the complaint. California courts have resoundingly rejected claims based on the "inevitable disclosure" theory. See e.g. Whyte v. Schlage Lock Co., 101 Cal.App.4th 1443, 1463 (2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete.").

UCAR's complaint, however, includes additional allegations independent of the "inevitable disclosure" theory. The DTSA defines "misappropriation" to include "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" and "disclosure or use of a trade secret of another" without consent. 18 U.S.C. §1863. UCAR alleges that Defendants-Counterclaimants initially possessed trade secret information by virtue of their employment. UCAR identifies its trade secrets to include: detailed proprietary data that UCAR collected from its network of more than 15,000 cars, which provided valuable insight into vehicle operation and usage; testing data for UCAR applications; software and testing data related to autopiloted cars developed by UCAR and subsets of the data set usable for work on autopilot technology; UCAR software developed to work with vehicle autopilot technology; UCAR strategic business plans; and the R&D work being done by Defendants-Counterclaimants for UCAR. UCAR alleges misappropriation of its trade secrets by improper acquisition: Defendants-Counterclaimants allegedly retained copies of UCAR's proprietary and confidential computer data and R&D work product following their resignation. More specifically, UCAR alleges on information and belief that upon resigning, Defendants-Counterclaimants took trade secret information, copying this information to other computers or copying data from

1  UCAR's Amazon Web Services account ("AWS account") to local memory on non-UCAR computers through access to remote servers, copying the information from UCAR laptops in Defendants-Counterclaimants' possession to other non-UCAR computer storage media owned or controlled by Defendants-Counterclaimants, and reformatting UCAR company computers so that they had no data on them.  Complaint, ¶¶1, 30.  UCAR also alleges on information and belief that Defendants-Counterclaimants disclosed trade secrets to third parties to, among other things, entice third parties to work with Defendants-Counterclaimants and/or to invest in or set up a new company to compete with UCAR.  Id., ¶29.  UCAR alleges that Li "effectively conceded" that Defendants-Counterclaimants had taken UCAR's information and had found at least $10 million worth of investment funds for them to start a competing venture that would be worth $70 million.  Id., ¶31. UCAR's allegations are sufficient at the pleading stage to state a violation of the DTSA.  The motion to dismiss the DTSA claim is denied.

### Claim 2:  Trade Secret Misappropriation in Violation of CUTSA

The CUTSA, codified at California Civil Code § 3426 et seq., "creates a statutory cause of action for the misappropriation of a trade secret."  Brescia v. Angelin, 172 Cal.App.4th 133, 143 (2009).  To state a claim under CUTSA, a plaintiff must demonstrate: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff."  Cytodyn, Inc. v. Amerimmune Pharms., Inc., 160 Cal.App.4th 288, 297 (2008).

As discussed above in the context of the DTSA claim, UCAR has identified its trade secrets, alleged that Defendants-Counterclaimants initially possessed the trade secrets by virtue of their employment and misappropriated the trade secrets by improper acquisition upon resignation and disclosure to third parties, and alleged damages caused by Defendants-Counterclaimants.  UCAR's allegations are sufficient to state a state law trade secret misappropriation claim.  The motion to dismiss the CUTSA claim is denied.

### Claim 3:  Violation of the Computer Fraud and Abuse Act (CFAA)

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

Defendants-Counterclaimants contend that the claim for violation of the CFAA should be dismissed because the CFAA prohibits the improper "access" of information, and does not prohibit misuse or misappropriation, as alleged in the present case. Defendants-Counterclaimants reason that UCAR admitted Defendants-Counterclaimants had access to information as part of their employment, including access to the "AWS Account," and therefore cannot be held liable under the CFAA. See Koninklijke Philips N.V. v. Elec-Tech Int'l Co., No. 14-2737 BLF, 2015 WL 1289984, at *4 (N.D. Cal. March 20, 2015) ("it is undisputed that [defendant] was authorized to access the information he allegedly stole . . . . Plaintiffs therefore cannot plead a cause of action under the CFAA. . . .)

Defendants-Counterclaimants' argument is unpersuasive. UCAR alleges that Defendants-Counterclaimants improperly accessed UCAR computers after their resignation, destroyed without authorization all of the information stored in the computers, and denied UCAR administrative access to the AWS server, all of which allegedly caused damage to UCAR. At the pleading stage, these allegations are sufficient to state a claim. See United States v. Nosal, 844 F.3d 1038 (9th Cir. 2016) (former employee who had computer access credentials revoked violated CFAA by accessing employer's database after revocation); LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1136 (9th Cir. 2009) (former employee violated the CFAA by logging into company website after he had ceased working for the company). The motion to dismiss the CFAA claim is denied.

### Claim 4: Breach of Employment Agreements

Defendants-Counterclaimants contend that UCAR cannot state a claim for breach of the employment agreements because UCAR has not, and cannot, allege facts to show that it fully performed its obligations under the agreements. Defendants-Counterclaimants argue that UCAR is in breach of the employment agreements because UCAR failed to grant Defendants-Counterclaimants the stock options and stock to which they are entitled. In response, UCAR argues that it has specifically pled full performance of the contract, and that in any event, UCAR did not have a contractual obligation to grant Defendants-Counterclaimants stock or stock options.

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

8

The Court finds UCAR's allegation of full performance sufficient at the pleading stage and the motion to dismiss the breach of contract claim is denied. Whether UCAR breached a contractual duty to issue stock or stock options is addressed separately below in the context of UCAR's motion to dismiss the counterclaims.

### Claim 5: Breach of the Covenant of Good Faith and Fair Dealing

Defendants-Counterclaimants contend that the claim for breach of the covenant of good faith and fair dealing is inadequately pled in two respects: UCAR has failed to allege the requisite facts to establish a fiduciary-like relationship to support a claim for tortious breach of the covenant; and UCAR has failed to identify an express contractual term that was allegedly frustrated.

In general, tort remedies are not available for breach of the implied covenant of good faith and fair dealing in the absence of a special relationship with "fiduciary characteristics." Mitsui Mfrs. Bank v. Superior Court, 212 Cal.App.3d 726, 730 (1989) (relying on Foley v. Interactive Data Corp., 47 Cal.3d 654 (1988)). For reasons discussed below in the context of the breach of fiduciary duty claim, UCAR's allegations are insufficient to establish a fiduciary relationship and accordingly do not support a claim for tortious breach of the covenant.

To the extent UCAR seeks contract remedies rather than tort remedies, however, UCAR's allegations are sufficient to state a claim. Drawing all reasonable inferences in UCAR's favor, the Complaint alleges that Defendants-Counterclaimants breached provisions in their employment agreements by stealing UCAR proprietary and confidential information for their own competitive use against UCAR; failing to return company property, including the data that had been stored on the UCAR laptops; failing to turn over UCAR's administrative level access to the AWS Account; engaging in other employment and business activities without the written consent of UCAR; and assisting in the set-up of a competing company while employed at UCAR. Complaint, ¶64.

The motion to dismiss the breach of the covenant of good faith and fair dealing claim is therefore denied; however, UCAR is precluded from seeking tort damages based upon this claim.

### Claim 6: Unfair and Unlawful Business Practices

Defendants-Counterclaimants contend that the CUTSA preempts UCAR's unfair competition claim because the claim is based solely on the alleged theft of information. UCAR does not dispute the preemptive reach of the CUTSA: "Courts have held that where a claim is based on the 'identical nucleus' of facts as a trade secrets misappropriation claim, it is preempted by [C]UTSA." Silicon Image, Inc. v. Analogix Semiconductor, Inc., No. 07-635 JCS, 2007 WL 1455903, at *9 (N.D. Cal. May 16, 2007). Instead, UCAR counters that the claim is based on allegations other than trade secret misappropriation.

In its unfair and unlawful business practices claim, UCAR re-alleges and incorporates the allegations of the entire Complaint as if fully set forth therein. Complaint, ¶71. Thus, UCAR's claim is based, at least in part, on trade secret misappropriation allegations. UCAR's claim is dismissed with leave to amend to eliminate the trade secret misappropriation allegations and to set forth more clearly a basis for the claim that is beyond the scope of CUTSA preemption.

### Claim 7: Property Theft/Conversion

Defendants-Counterclaimants contend that the CUTSA preempts UCAR's conversion claim because the claim is based on the same nucleus of facts as the misappropriation of trade secrets claim. Alternatively, Defendants-Counterclaimants contend that the conversion claim fails because intangible intellectual property cannot be subject to conversion as a matter of law. See Innospan Corp. v. Intuit, Inc., No. 10-4422 WHA, 2011 WL 856265 (N.D. Cal. March 9, 2011). In response, UCAR contends that the conversion claim is based upon allegations that do not and cannot serve as the basis for trade secret theft. In particular, UCAR relies on its allegations that Defendants-Counterclaimants destroyed all the information on UCAR's laptops and took administrative access rights information. UCAR reasons that the destruction of information and taking of administrative rights information does not constitute misappropriation of trade secret information. UCAR also argues that the files that were destroyed and the denial of access to actual computer files are tangible property and support a claim for conversion.

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

Based upon UCAR's representation that the conversion claim is distinct from trade secret misappropriation[3], the Court finds that the conversion claim is not preempted by the CUTSA. Further, the Court finds that UCAR has alleged a legally viable conversion claim based upon the destruction of information on UCAR's laptops and the deprivation of administrative access rights information. In Kremen v. Cohen, 337 F.3d 1024, 1030 (9th Cir. 2003), the Ninth Circuit held that the right to use a domain name is subject to conversion, despite the fact that it is a form of intangible property. The Ninth Circuit observed that "property" includes "every intangible benefit and prerogative susceptible of possession or disposition." Id. (quoting Downing v. Mun. Court, 88 Cal.App.2d 345, 350 (1948)). Consistent with this definition, several California courts have held that the tort of conversion applies to intangible electronically stored information in various forms. See e.g. Thrifty-Tel, Inc. v. Park, 220 Cal.App.4th 1559 (1996) (recognizing conversion of information recorded on floppy disk); A&M Records, Inc. v. Heilman, 75 Cal.App.3d, 554, 570 (1977) (audio record subject to conversion); Lone Ranger Television, Inc. v. Program Radio Corp., 740 F.2d 718 (9th Cir. 1984) (intangible property interest in magnetic tapes subject to conversion); Loop AI Labs Inc. v. Gatti, No. 15-798 HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (theft of computer and the files it contained supports conversion claim). Here, UCAR similarly alleges that Defendants-Counterclaimants destroyed intangible data stored on UCAR's laptops. As observed in Kremen, "[i]t would be a curious jurisprudence that turned on the existence of a paper document rather than an electronic one. Torching a company's file room would then be conversion while hacking into its mainframe and deleting its data would not. That is not the law, at least not in California." Kremen v. Cohen, 337 F.3d at 1034. UCAR need not allege destruction of the laptops to state a claim for conversion.[4] The motion to dismiss the

---

[3] UCAR's Opposition to Motion to Dismiss, p. 12 ("the Complaint makes several allegations that do not and cannot serve as the basis for trade secret theft.").

[4] UCAR also argues that Defendants-Counterclaimants took various physical items from UCAR, including USB drives, telephones, security access badges and other items. UCAR Opposition, p.13. UCAR is granted leave to add this allegation to the complaint, provided that UCAR is also able to satisfactorily allege the remaining elements of a claim for conversion.

conversion claim is denied.

## Claim 8: Fraud/Deceit

Defendants-Counterclaimants contend that UCAR fails to plead fraud with particularity as required by Rule 9(b), Fed.R.Civ.P. UCAR contends that it has stated a viable claim for fraud.

UCAR's allegations are insufficient to satisfy Rule 9(b). To satisfy Rule 9(b), a party alleging fraud must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation. Applied Elastomerics, Inc. v. Z-Man Fishing Products, No. 06-2469 CW, 2006 WL 3251732, at *6 (N.D. Cal. Nov. 8, 2006). The party asserting fraud must also explain why the challenged representation was untrue or misleading. Id. None of these details are alleged in the Complaint. Instead, UCAR alleges in vague and conclusory terms that Defendants falsely represented that Defendants-Counterclaimants "were working on valuable work product for UCAR's benefit and that UCAR would have access to the work product," that UCAR relied on the alleged misrepresentation and suffered damages as a result. Complaint,¶¶84-90. The fraud claim is dismissed with leave to amend.

## Claim 9: breach of fiduciary duty

Defendants-Counterclaimants contend that the breach of fiduciary duty claim is deficient because UCAR fails to plead facts to support the existence of a fiduciary duty. Further, Defendants-Counterclaimants argue that as a matter of law "employment-type relationships are not fiduciary relationships." O'Byrne v. Santa Monica-UCLA Med. Ctr., 94 Cal.App.4th 797, 811 (2001).

UCAR's allegations are insufficient to state a claim for breach of the fiduciary duty. A bare employee-employer relationship does not create a fiduciary relationship. See e.g. O'Byrne, 94 Cal.App.4th at 911; Amid v. Hawthorne Community Medical Group, Inc., 212 Cal.App.3d 1383, 1391 (1989). UCAR nevertheless argues that a fiduciary duty should be imposed based upon the following:

> Defendants, and each of them, were given a high degree of

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

12

> autonomy and trust by UCAR in carrying out their work for the company. As a separate R&D group with their own office space, their own set of computers, and their own administrative level access to UCAR proprietary and confidential information including the AWS Account, each Defendant had a fiduciary relationship with UCAR whereby each Defendant was duty bound to act with the utmost good faith for the benefit of UCAR. Each Defendant voluntarily accepted this fiduciary relationship with UCAR and signed agreements indicating that they had a duty of loyalty to the company as part of their employment. Defendant Li, as the sole Director of UCAR Technology (USA) Inc., had a particular level of confidence and responsibility as well as a higher level of duty to UCAR.

Complaint, ¶92. These allegations, however, are insufficient as to Zhong, Huo and Kou because the "mere placing of a trust in another" does not create a fiduciary relationship." Amid, 212 Cal.App.3d at 1391. UCAR also alleges a contractually imposed duty of loyalty as to all of the Defendants-Counterclaimants. However, a breach of fiduciary duty and breach of the duty of loyalty are two distinct claims under California law. E.D.C. Technologies, Inc. v. Seidel, 216 F.Supp.3d 1012, 1016 (N.D. Cal. 2016). The breach of fiduciary duty claim is accordingly dismissed as to Zhong, Huo and Kou. The motion is denied as to Defendant-Counterclaimant, Li, who is identified as a director of UCAR Technology (USA), Inc., and may have potential liability for breach of a fiduciary duty in his capacity as a director.

B. Plaintiffs' Motion to Dismiss Counterclaims

UCAR moves to dismiss the counterclaims on essentially two grounds. First, UCAR contends that the employment contracts provide that any stock options would be subject to approval of the Company's Board of Directors. UCAR contends that Defendants-Counterclaimants do not allege, nor can they allege, that there was Board approval for the stock options and stock, and accordingly the contract claims must be dismissed. Second, UCAR argues that the fraud claim lacks the specificity required by Rule 9(b), Fed.R.Civ.P.

<u>Claims One and Two: Breach of Contract and Anticipatory Breach of Contract</u>

The first counterclaim for breach of contract is asserted by Li, Zhong and Kou and the second counterclaim for anticipatory breach of contract is asserted by Huo. Each of the four

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

13

employment contracts includes the following provision regarding stock options:

> 3. Stock options.
> a. <u>Number of stock options</u>.  Subject to the approval of the Company's Board of Directors, you will be granted options to purchase such number of shares equivalent to [] of the Company's issued and outstanding common stock . . . .

Dkt. 6, Ex. 1, 4.  Zhong's employment agreement includes similar language regarding restricted stock:

> 3. Share Incentives.
> a. <u>Number of shares under the incentive grant</u>.  Subject to the approval of the Company's Board of Directors, you will be granted a restricted stock unit of such number of shares equivalent to . . . .

Dkt. 6, Ex. 2.[5]  Defendants-Counterclaimants acknowledge that the employment contracts include the clause "subject to board approval" and that they have not pled board approval.  Nevertheless, Defendants-Counterclaimants argue that their claims should not be dismissed because: (1) UCAR's action, in choosing to list its shares on China's NEEQ market, excused any requirement for Defendants-Counterclaimants to plead board approval, (2) board approval only applies to the number of shares, not whether they would be paid out at all, (3) Defendants-Counterclaimants are entitled to an inference at the pleading stage that Li, the sole board member of UCAR Technology (USA), Inc., would have approved his own stock options and (4) the parties to the contract did not intend board approval to be a requirement in the first instance.

The Court rejects the first argument because Defendants-Counterclaimants have not pled a sufficient basis for excusing board approval.  Defendants-Counterclaimants' reliance on <u>Jacobs v. Tenneco W., Inc.</u>, 186 Cal.App.3d 1413 (1986), is misplaced.  In that case, plaintiffs asserted a claim for breach of the implied covenant of good faith and fair dealing based upon defendants' alleged failure to submit a contract for the purchase and sale of land to defendants' board of

---

[5] The employment contracts further state that the stock options or restricted stock would begin vesting after Li, Zhong and Kou had worked for UCAR for twelve months.

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

14

1 directors for approval. Here, Defendants-Counterclaimants assert breach of contract, not breach of
2 the implied covenant of good faith and fair dealing. Moreover, the grant of stock options and
3 stock in Defendants-Counterclaimants' employment contracts is subject to the discretion of the
4 board and UCAR cannot be liable for breach of contract for failing to grant any stock options. See
5 Zamora v. Zuni Solar, No. 16-1260 ODW, 2016 WL 3512439 (C.D. Cal. June 27, 2016) (granting
6 motion to dismiss breach of contract claim when contract gave company discretion to act as it
7 did); Song Fi Inc. v. Google, Inc., 108 F.Supp.3d 876, 885 (N.D. Cal. 2015) (dismissing breach of
8 contract claim because "conduct authorized by a contract cannot give rise to a claim for breach of
9 the agreement"); Schwarzkopf v. IBM, Nol. 08-2715 JF, 2010 WL 1929625, at *10 (N.D. Cal.
10 May 12, 2010) ("There is no breach of contract where 'defendants were given the right to do what
11 they did by the express provisions of the contract.'").

Defendants-Counterclaimants' second argument is also unpersuasive. The phrase "[s]ubject to the approval of the Company's Board of Directors," is placed at the beginning of the sentence and applies to the grant of stock options or restricted stock. The Company's Board of Directors accordingly had discretion to deny approval of any stock options or stock. In Cohen v. Resolution Trust Corp., No. 90-1065 RP, 1993 WL 282051, at *3 (S.D. Cal. May 10, 1993), a case relied on by Defendants-Counterclaimants, the court evaluated a compensation bonus provision that was arguably susceptible to competing interpretations and ultimately ruled in favor of plaintiffs on summary judgment, finding that plaintiffs' interpretation gave a reasonable and operative meaning to the provision. Relying on Cohen, Defendants-Counterclaimants argue that the stock option provision at issue in this case is also susceptible to competing interpretations and therefore dismissal is premature. Defendants-Counterclaimants' interpretation of the stock option provisions, however, is unreasonable as a matter of law. The only reasonable interpretation of the provision(s) at issue is that the grant of any stock or restricted stock is conditioned upon board approval.

Defendants-Counterclaimants next argue that they are entitled to an inference that Li, as

the sole shareholder of UCAR Technology (USA), Inc. would have approved his stock options. The argument is unpersuasive. The employment contracts identify UCAR Technology Inc. as the employer "Company," not UCAR Technology (USA), Inc. The stock option provisions in the employment contracts provide options for stock or stock in the "Company," not UCAR Technology (USA), Inc. Defendants-Counterclaimants do not allege any facts to show that Li, as the sole shareholder of UCAR Technology (USA), Inc. had authority to approve the grants of stock in UCAR Technology Inc. Nor are there facts alleged to support an inference that Defendants-Counterclaimants are contractually entitled to stock or stock options in UCAR Technology (USA), Inc. instead of UCAR Technology Inc. At most, Defendants-Counterclaimants allege that UCAR Technology Inc., UCAR Technology (USA), Inc. and UCAR, Inc. are alter-egos of each other (Dkt. 48 at 22:11-12), but they do not explain how their alter-ego theory gives them any legal right to stock options or restricted stock in any corporation other than UCAR Technology Inc.

Defendants-Counterclaimants' fourth argument is that the board approval provision in the employment contracts is the result of "mutual mistake." Defendants-Counterclaimants, however, have not alleged facts in their counterclaims to support such a theory.

The breach of contract and anticipatory breach of contract claims are dismissed with leave to amend.

### Claim 3: Promissory Estoppel

In their promissory estoppel claim, Defendants-Counterclaimants allege that (a) UCAR anticipatorily breached the employment agreements by listing UCAR Technology Inc. on China's NEEQ market, and (b) to the extent UCAR's anticipatory breach "may have effected a rescission of the employment agreements," Defendants-Counterclaimants are entitled to "restitutionary remedies in promissory estoppel for the uncompensated portion of their labor which was supposed to be compensated by stock options." Dkt. 48, p.37. UCAR seeks dismissal of the promissory estoppel claim, arguing among other things that UCAR did not promise to issue options or

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

16

restricted stock without board approval, and Defendants-Counterclaimants have not alleged a valid basis for rescission of the written contract.

As discussed above in the context of the contract claims, the employment agreements give the board discretion to approve or disapprove the grant of stock options and restricted stock. Because the board had the discretion to deny stock options and restricted stock, the decision to list the stock on the NEEQ market did not constitute a breach or anticipatory breach of the employment agreements as a matter of law and did not trigger a right of rescission. It follows that Defendants-Counterclaimants may not proceed on a promissory estoppel claim premised on a purported promise to issue stock options or restricted stock because that subject matter is governed by the employment contracts. See e.g. Naidong Chen v. Fleetcor Technologies, Inc., No. 16-135 LHK, 2017 WL 1092342, at *13 (N.D. Cal. March 23, 2017) (because parties have an actual agreement covering compensation, plaintiffs cannot rely on a contract implied in law theory); Healy v. Brewster, 59 Cal.2d 455, 464 (1963); San Diego City Firefighters, Local 145 v. Bd. Of Admin. Of San Diego City Employees' Retirement System, 206 Cal.App.4th 594, 618 (2012). The motion to dismiss the promissory estoppel claim is granted with leave to amend.

### Claim 4: Unjust Enrichment

Defendants-Counterclaimants Li, Zhong and Kou assert a claim for unjust enrichment predicated upon the alleged failure to confer stock options and restricted stock. UCAR seeks dismissal of this claim, arguing that as a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, there is a written agreement defining the parties' respective rights. In response, Defendants-Counterclaimants argue that UCAR's breach and anticipatory breach of the employment agreements triggered their right to rescission and equitable remedies.

Defendants-Counterclaimants' rescission theory fails for the reasons already discussed in the context of the contract claims and the promissory estoppel claim. Because Defendants-Counterclaimants have not adequately alleged a legal basis for finding the employment contracts invalid or unenforceable, the employment contracts preclude the unjust enrichment claim. See

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

Mosier v. Stonefield Josephson, Inc., 815 F.3d 1161, 1172 (9th Cir. 2016) (quasi-contract action for unjust enrichment does not lie where express binding agreements exist and define the parties' rights). The unjust enrichment claim is dismissed with leave to amend.

### Claim 5: Fraudulent Inducement

Defendants-Counterclaimants' fraudulent inducement claim is based upon two alleged fraudulent representations: (a) that stock options or stock would be part of their compensation for their employment and (b) that UCAR was a "legitimate company" that would obey all laws and corporate formalities and foster a productive and open working environment. UCAR argues that the claim should be dismissed because the alleged fraud is not pled with particularity as required by Rule 9(b), Fed.R.Civ.P.

"The elements of a cause of action for fraudulent inducement to an employment contract are: (1) that the employer misrepresented or concealed a material fact during the hiring process, (2) knowledge of the falsity of the fact or lack of reasonable grounds for believing it to be true, (3) an intent to induce reliance, (4) justifiable reliance by the employee, and (5) resulting damages." Garamendi v. Golden Eagle Ins. Co., 128 Cal.App.4th 452, 470 (2005) (citing Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996)). The fraudulent inducement claim sounds in fraud and accordingly must be pled with particularity as required by Rule 9(b), Fed.R.Civ.P.

In response to the motion to dismiss, Defendants-Counterclaimants argue that they have satisfactorily alleged facts from which to infer fraud. Defendants-Counterclaimants allege that UCAR promised stock options or stock as compensation for employment. Defendants-Counterclaimants allege fraudulent intent may be inferred from the fact that at the time UCAR was promising stock and stock options, UCAR was simultaneously preparing to list the Company on the NEEQ market. UCAR thus allegedly knew at the time it made the offers of stock and stock options that it would be unable to keep those alleged promises.

Insofar as the fraud claim is predicated on an alleged promise to grant stock or stock options, the claim is inadequately pled. Counterclaimants fail to identify who made the promise to

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

18

unconditionally grant stock or stock options, when the alleged promise was made and where the alleged promise was made. The only basis for the alleged promise appears to be the employment contracts. The alleged fraudulent promise to unconditionally grant stock or stock options, however, is inconsistent with the terms of the contracts, which as discussed previously, gave the board full discretion to grant or deny stock or options.

With respect to the alleged misrepresentation that UCAR was a "legitimate company," Defendants-Counterclaimants do not raise a rebuttal. Instead, Defendants-Counterclaimants reframe their theory and argue that UCAR fraudulently misrepresented that it would hire engineers to create a research operation in California. Defendants-Counterclaimants argue that they have sufficiently alleged the identity of the parties, including UCAR representatives Charles Lu, Zhiya Qian, Shuo Di, and Li, who allegedly made the false statement to Defendants-Counterclaimants in May, June and July of 2015, and again in December of 2015 and January of 2016. Defendants-Counterclaimants argue that UCAR never intended to hire more than approximately ten engineers and never intended to conduct serious research efforts in California.

Despite the facts recited above, Defendants-Counterclaimant's theory of fraud remains inadequately pled. Among other things, there are no facts alleged to establish that the UCAR representatives had a fraudulent intent when they made representations about hiring engineers and creating a research operation. The fraud claim is dismissed with leave to amend.

## V.  CONCLUSION

For the reasons set forth above, Defendants-Counterclaimants' motion to dismiss UCAR's claims is granted as to the claims for unfair and unlawful business practices and for fraud/deceit, with leave to amend. The motion to dismiss is also granted, with prejudice, as to the claim for breach of fiduciary duty against Zhong, Huo and Kou.

//

//

//

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

Defendants-Counterclaimants' motion to dismiss is denied as to the remaining claims. UCAR's motion to dismiss the counterclaims is granted with leave to amend. The parties shall file and serve amended pleadings consistent with this Order no later than December 29, 2017.

**IT IS SO ORDERED.**

Dated: December 15, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 5:17-cv-01704-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

20